PETER CALDAROLA, Respondent, *v.* MOORE-MCCORMACK LINES, INC., Defendant, and GERDA ECKERT et al., Partners Doing Business under the Name of THOR ECKERT & Co., Appellants.

First Department, April 5, 1946.

564

*Raymond Parmer* of counsel (*Vernon Sims Jones* with him on the brief; *Kirlin, Campbell, Hickox & Keating,* attorneys), for appellants.

*Abraham M. Fisch* of counsel (*Sidney Schiffman* with him on the brief), for respondent.

PECK, J. Plaintiff, a longshoreman, while engaged in unloading cargo, was injured by the fall of a defective boom on the steamship " Everagra ". The vessel was owned by the United States. Defendants-appellants had a contract with the United States, designated as a general agency contract, whereby they were appointed " agent  *  *  *  to manage and conduct the business of vessels " assigned to them by the United States, including the " Everagra ".

The contract provides that defendants-appellants are to conduct the business in accordance with directions, orders and regulations issued by the United States. The " business " includes the vessels' trade, collecting and accounting therefor, equipping, victualing, supplying and maintaining the vessels, inspecting and advising the United States with respect to the state of repair and condition of the vessels, and arranging for their repair.

As to operation of the vessels, the contract provides that defendants-appellants shall procure a master who " shall be an agent and employee of the United States, and shall have and exercise full control, responsibility and authority with respect to the navigation and management of the vessel "; that they " shall procure and make available to the Master for engagement by him the officers and men required by him to fill the complement of the vessel," the officers and members of the crew to be subject only to the orders of the master.

The regulations of the War Shipping Administration, to which defendants-appellants' conduct of the business was subject, provide that they shall " determine the repairs necessary," and arrange for and order the performance of required repairs, with or without prior approval of the Repair Division of the War Shipping Administration, depending on whether the expenditures shall exceed $10,000.

Plaintiff might, of course, proceed against the United States in the Federal Court in Admiralty, where he would not be entitled to a jury trial, but brought this action against the agents in the State court, where he could have a jury trial, on the theory that they were negligent in not repairing the defective boom and that such negligence gives rise to a cause of action

in plaintiff's favor. Concededly, they had not supplied the boom and their alleged negligence was failure to repair the boom. Defendants-appellants contend that any faliure on their part to repair the boom was only a breach of contract as to the United States and was not actionable negligence as to plaintiff.

Plaintiff agrees, perforce, with defendants-appellants' major premise that he may not avail himself of their breach of contract with the United States, but must bottom his cause of action on a showing of their control of the instrumentality causing the injury. (*Cullings* v. *Goetz*, 256 N. Y. 287.) The question, therefore, is whether they had such control of the boom as to incur responsibility to one in plaintiff's position for the condition of the boom.

Defendants-appellants were not vested with management or operation of the ship. Their contract with the United States makes it clear that their functions related to the ship's " business " as distinguished from its physical operation. They were not in control of the ship itself. That was vested in the master as the agent of the United States and not as agent of defendants-appellants. They had no control over the use or operation of the ship machinery, such as the boom on the occasion of this injury. They had access to the ship and had a contractual duty to the United States of inspecting and determining the necessity for repairs and arranging for the making of repairs.

Plaintiff regards defendants-appellants' access to the ship and their authority to order repairs as sufficient control to imply a responsibility for the condition of the ship to persons on the ship in connection with the ship's business. We cannot so regard it. The defendants-appellants did not in fact have control of the ship or its machinery, and the opportunity and duty which they had to order repairs were contractual only and related only to the United States. They are not the equivalent of control or a substitute for control in relation to the public.

The defendants-appellants had not supplied the boom nor done anything to render it defective. Their failure to observe its condition and order its repair was strictly nonfeasance. The distinction between misfeasance and nonfeasance may be unimportant related to one in control of property who has a responsibility, arising out of control, for the condition of the property, and whose failure to repair a dangerous condition

may be regarded as negligent operation of the property and as actionable as his creation of the condition. Not so of one not in control and not having the public responsibility for the condition of the property. Nonfeasance on his part is not actionable except as to one to whom he has incurred an obligation of action.

The principal legal authority advanced by plaintiff in support of his position is *Brady* v. *Roosevelt S. S. Co.* (317 U. S. 575). The agency contract in that case was very different, however, requiring the agent to man and operate the vessel

We are unable to tell from the reported decisions of the Appellate Division, Second Department, in *Pedersen* v. *Stockard Steamship Corp.* (268 App. Div. 992) and *Pipitone* v. *Standard Fruit & Steamship Co.* (270 App. Div. 844) whether the alleged negligence of the agent in those cases consisted of furnishing defective equipment or failing to repair defective equipment. Reading the two decisions together, however, we do not gather the impression that the court meant to indicate a view that nonfeasance of the agent, under the contract involved in the present case, would be actionable. The New York cases cited in the *Pipitone* memorandum are *Mollino* v. *Ogden & Clarkson Corp.* (243 N. Y. 450) in which the agent had taken " sole and absolute control " of the property, and *Moch Co.* v. *Rensselaer Water Co.* (247 N. Y. 160) where the court held the defendant not liable for nonfeasance, pointing to the distinction between launching an instrument of harm and failing to become an instrument for good.

Defendants-appellants' duty to repair here was a duty owing only to the United States and arising out of contract Plaintiff cannot avail himself of the contract, and having failed to show that defendants-appellants had such control of the ship or boom as to make them publicly responsible for the condition of the ship or boom, plaintiff has failed to establish that defendants-appellants were under any duty to plaintiff to repair the boom or that their failure to make the repair was any breach of duty owed to the plaintiff or gave rise to any cause of action in plaintiff's favor.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., and CALLAHAN, J., concur; TOWNLEY and GLENNON, JJ., dissent and vote to affirm.

Judgment reversed, with costs to the appellants, and the complaint dismissed, with costs.