CALDAROLA *v.* ECKERT ET AL., DOING BUSINESS AS
THOR ECKERT & CO.

No. 625.   Argued March 31, April 1, 1947.—Decided June 23, 1947.

*Abraham M. Fisch* argued the cause for petitioner. With him on the brief was *Isidor Enselman.*

*Raymond Parmer* argued the cause for respondents. With him on the brief were *Cletus Keating* and *Vernon Sims Jones.*

*Acting Solicitor General Washington, Assistant Attorney General Sonnett, J. Frank Staley, James C. Wilson, Paul A. Sweeney* and *Leavenworth Colby* filed a brief for the United States, as *amicus curiae.*

*Jacquin Frank* and *Arthur Leonard Ross* filed a brief for the International Longshoremen's & Warehousemen's Union, as *amicus curiae,* urging reversal.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The S. S. Everagra is owned by the United States and managed in its behalf by the respondents as General Agents. (For the relevant portions of the contract and for full consideration of it in relation to issues other than those here involved, reference is made to *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707.) On January 27, 1944, the Everagra, docked in the North River, New York City, was being unloaded by a stevedoring concern, the Jarka Company. Jarka did the unloading under a contract with the United States, negotiated through the War Shipping Administration. One of its provisions was that "the Administrator shall furnish and maintain in good working order all" necessary equipment. Caldarola, the

petitioner, was an employee of Jarka. In the course of his work on the vessel he was injured. He brought this action in the New York courts against the respondents, claiming that his injury was caused by a defective boom and that they were liable for failing in their duty as Agents to maintain it in sound condition.

The New York Court of Appeals, affirming the Appellate Division in setting aside a verdict for the petitioner, 270 App. Div. 563, 61 N. Y. S. 2d 164, held that under New York law the relation which the Agents bore to the vessel did not make them responsible to a third person for its condition. 295 N. Y. 463, 68 N. E. 2d 444. Because of claimed conflict in the decisions, particularly between this ruling and *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, we granted certiorari. 329 U. S. 704.

No doubt petitioner could have sued the United States in Admiralty. Section 2 of the Suits in Admiralty Act, 41 Stat. 525, 46 U. S. C. § 742. He chose not to do so. Presumably to obtain the benefit of trial by jury, he asked for relief from New York. There is no question that the injury of which Caldarola complains is a maritime tort. As such it is suable in the State courts by virtue of § 9 of the Judiciary Act of 1789 which saves "to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it . . . ." 1 Stat. 76–77. Whether Congress thereby recognized that there were common law rights in the States as to matters also cognizable in admiralty, or whether it was concerned only with "saving" to the States the power to use their courts to vindicate rights deriving from the maritime law to the extent that their common law remedies may be available, is a question on which the authorities do not speak with clarity. Compare *Waring* v. *Clarke,* 5 How. 441, 460–61; *Taylor* v. *Carryl,* 20 How. 583, 598–99; 3 Story on the Constitution (1st ed.) 533, n. 3, with *Schoonmaker* v. *Gilmore,* 102 U. S. 118; *The Hamilton,* 207 U. S. 398;

158

*Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *C. J. Hendry Co.* v. *Moore*, 318 U. S. 133; *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85, 88–89. In any event, whether New York is the source of the right or merely affords the means for enforcing it, her determination is decisive that there is no remedy in its courts for such a business invitee against one who has no control and possession of premises. Compare *Douglas* v. *New York, New Haven & Hartford R. Co.*, 279 U. S. 377, and *Testa* v. *Katt,* 330 U. S. 386.

The New York Court of Appeals authoritatively determines who is liable, in New York, for such an occurrence as that of which Caldarola complains. Insofar as the issues in this case exclusively concern New York law, that court had the final say in holding that one in the relation of the respondents to the petitioner is not liable for the tort of which the latter complains. But to the extent that the determination of tort liability in New York is entangled with the construction of the contract between the Agents and the United States, the interpretation of that contract is a matter of federal concern and is not concluded by the meaning which the State court may find in it.

We agree that if, on a fair reading of the contract, the control which the Agents had over the vessel is the kind of control which New York requires as a basis of liability to third persons, the New York courts cannot so read the contract as to deny the right which New York recognizes. It is not claimed that an injured party has rights under the agency contract or that it created duties to third persons. *Robins Drydock & Repair Co.* v. *Flint,* 275 U. S. 303. And so the narrow question is whether the Agents were in possession and control of the Everagra. This is the crucial issue, because liability in tort by the Agents for Caldarola's injury would only arise in New York when there is such possession and control of premises on

which injury occurs, due to negligence in their maintenance. *Cullings* v. *Goetz,* 256 N. Y. 287, 176 N. E. 397. The United States, as *amicus curiae,* submitted what we deem to be conclusive considerations against reading the contract so as to find the Agents to be owners *pro hac vice* in possession and control of the vessel. The consequences, to both the national and international interests of the United States, of such a construction would be too far-reaching to warrant such a forced reading merely in order to have a basis on which to build liability under the law of New York. Serious issues affecting the immunity of Government vessels in foreign ports as well as immunity from regulation and taxation by local governments would needlessly be raised. After all, the question is not whether petitioner may be compensated for his injury. Congress has made provision for that. Petitioner insists, in order to enable him to sue in the courts of New York, that the Agents are to be deemed, as a matter of federal law, owners of the vessel *pro hac vice* and, therefore, as a matter of State law, subject to the duties of such ownership under New York law toward business invitees. We reject this construction.

Our previous decisions do not require it. *Hust* v. *Moore-McCormack Lines, supra,* arose under the Jones Act. (Act of March 4, 1915, 38 Stat. 1185, as amended, June 5, 1920, 41 Stat. 1007). We there held that under the Agency contract the Agent was the "employer" of an injured seaman as that term is used in the Jones Act, and a seaman could therefore bring the statutory action against such an "employer." The Court did not hold that the Agency contract made the Agent for all practical purposes the owner of the vessel. It did not hold that it imposed upon him, as a matter of federal law, duties of care to third persons, more particularly to a stevedore under employment of a concern unloading the vessel pursuant to a contract with the United States. *Brady* v. *Roosevelt*

*Steamship Co.,* 317 U. S. 575, is likewise remote from the issues decisive of this case. It merely held that the Suits in Admiralty Act, by furnishing an *in personam* remedy against the United States, did not free the Agent from liability for his own torts. The *Brady* case did not reach the "different question" whether "a cause of action" against the Agent had been established. 317 U. S. at 585. That is the precise question here, and more particularly, whether the contract created a relationship from which, under New York law, liability as to business invitees followed.

*Judgment affirmed.*

Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Murphy concur, dissenting.

For the reasons stated in my separate opinion in *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, 734, I think that respondents were owners *pro hac vice* of the vessel, since the business of managing and operating it was their business. They were, therefore, principals and liable to petitioner, a longshoreman who was injured while working on the deck of the vessel by reason of the breaking of a cargo boom, part of the ship's gear.

The Circuit Court of Appeals for the Second Circuit has reached the same result in a case decided since *Hust* v. *Moore-McCormack Lines.* In *Militano* v. *United States,* 156 F. 2d 599, that court held that the agent under the same form of operating agreement as we have here was owner *pro hac vice.* Swan, J., speaking for the court, said in reference to the *Hust* case, p. 602, "If the agent remains the employer sufficiently to be liable to members of the crew under the Jones Act, we think it cannot escape the duties of an owner pro hac vice in other respects. Thus it has the duty to furnish stevedores with a safe place to work, a duty which is analogous to that owed by a landowner to a business visitor."

The Court does not essay to answer that argument; nor does it address itself to the facts which I reviewed in the *Hust* case and which establish that the business of managing and operating the vessel was the business of the agent. It avoids analysis of the actual arrangement by viewing with alarm the consequences to the Government of such a holding as applied in other situations. But we are here concerned with private rights which press for recognition. It is no answer to the legal argument on which those private rights rest that the Government might be inconvenienced if they were recognized. It is plain under this operating agreement that the United States is merely the underwriter of the financial risks of the venture while the private operator performs the managerial functions in the usual way. To call that government operation is to ignore the realities of the relationship. Whatever the consequences in other situations, it is shocking to find private operators getting immunity in this manner from their traditional liability for tort claims.

MR. JUSTICE RUTLEDGE, dissenting.

I agree with respondents' counsel and the Court that *Hust* v. *Moore-McCormack Lines,* 328 U. S. 707, does not rule this case. Nevertheless I cannot agree with the Court's view that either New York law or the so-called "agency contract," identical with that involved in the *Hust* case, immunizes respondents from the consequences of their negligence causing petitioner's injury.

The *Hust* case involved the rights of seamen, not of longshoremen.[1] Also it arose under the Jones Act, 46 U. S. C. § 688, whereas here liability is grounded upon maritime tort. And the *Hust* decision rested in part

---

[1] Congress and the President, in the legislative and executive action taken in connection with the Merchant Marine and pertinent in the *Hust* case, were concerned with the rights of seamen, not primarily or perhaps even incidentally with those of longshoremen.

upon the effects of the so-called Clarification Act of 1943, 50 U. S. C. App. (Supp. V, 1946) § 1291, which has no bearing in this case, since seamen are not involved.

The *Hust* decision flatly rejected the view that the events there in question [2] had been effective to strip the seaman of his various preexisting remedies, replacing them with the single remedy of suit provided by the Suits in Admiralty Act.[3]  46 U. S. C. § 742.  The necessary result was to preserve not merely the seaman's rights under the Jones Act but also his other preexisting ones.[4] For if the conjunction of events put forward in the *Hust* case as having made the Suits in Admiralty Act remedy the only one available to the seaman was thus effective, the Jones Act remedy as well as others was thereby excluded.  And if it was not excluded, neither were those

---

[2] In the *Hust* case, after noting the disruptive consequences for seamen's long-settled rights flowing from the view that they had been reduced for assertion to the single remedy provided by the Suits in Admiralty Act, we said: "We may assume that Congress could authorize so vast a disturbance to settled rights by clear and unequivocal command. It is not permissible to find one by implication. *Brady* v. *Roosevelt Co., supra* [317 U. S. 575], at 580. Here the disruption, if it has occurred, has done so only as an implied result of the conjunction of the Suits in Admiralty Act's provisions with the Government's emergency action in taking over the shipping industry for war purposes." 328 U. S. at 722. No such intent, we said, could be found in any action of Congress, or of that body and the President, in exercising their powers to bring the industry under governmental control; or in the Suits in Admiralty Act or the Jones Act as applied to the relation created by the "agency" contract.

[3] See note 2.

[4] Confirmation of the conclusions summarized in note 2, *supra*, was found in the legislative history of the Clarification Act of 1943, 50 U. S. C. App. (Supp. V, 1946) § 1291, and particularly in the provision for election of remedies given by § 1, as to injuries accruing on or after October 1, 1941, and before March 24, 1943, the Act's effective date. Opinion was expressly reserved as to the effect of that Act concerning injuries occurring after its effective date. 328 U. S. at 727.

others long possessed by seamen.[5]  The *Hust* decision
was therefore not merely a construction of the Jones Act.
That Act was simply a specific fulcrum for turning the
broader issue presented.

But seamen's rights are not longshoremen's rights
and the events combining to present the question concern-
ing seamen's rights in the *Hust* case were not conclusive
upon longshoremen's rights.  This is true although in
some instances longshoremen, through legislation or by
virtue of their succession to seamen occasioned by the in-
dustry's evolution in some phases of ship and shore duty,
have been held entitled to similar protections.  *Seas Ship-
ping Co.* v. *Sieracki*, 328 U. S. 85; *Atlantic Transport Co.*
v. *Imbrovek*, 234 U. S. 52.  The question in this case
therefore is not one necessarily governed by the same con-
siderations as applied in the cases of seamen covered by
the *Hust* decision.

But, as the Court recognizes, it is one of maritime tort,
although longshoremen rather than seamen are involved;
and is moreover "suable in the State courts by virtue
of § 9 of the Judiciary Act of 1789 which saves 'to suitors,
in all cases, the right of a common law remedy, where
the common law is competent to give it.'"  Notwith-
standing the characterization as maritime tort, the Court
skirts the question whether the source of the right is New
York law or, on the contrary, is federal law for which New
York, pursuant to § 9, merely supplies a means for en-
forcement.  For in either event, it says, New York's
"determination is decisive that there is no remedy in its
courts for such a business invitee against one who has
no control and possession of premises."

---

[5] In the *Hust* case we said of the argument that the Suits in Admi-
ralty Act remedy had become exclusively available for asserting
seamen's rights that, with specified exceptions, "the various rights of
seamen, enforceable by various proceedings in admiralty and at law,
in state and federal courts, are swept into one hopper, the suit against
the Government . . . ."  328 U. S. at 720.

From this conclusion I disagree. For, if the liability here is founded in federal law, as creating the maritime tort, then New York law has nothing to do with creating or nullifying the substantive right. Its sole function is to supply the remedy commanded by § 9 of the Judiciary Act. *Testa* v. *Katt,* 330 U. S. 386. And in my judgment the liability here, since it arises from a maritime tort, is a creature of federal law in its entirety, not of state law.[6] I therefore do not agree that any substantive issues in the case "exclusively concern New York law" or that in any respect that state's Court of Appeals "had the final say in holding that one in the relation of the respondents to the petitioner is not liable for the tort of which the latter complains." I do not understand how the Court can leave open the question whether New York law has a hand in creating the right sued on or one only in supplying a forum and remedy, and at the same time can rely on New York law as having any part in creating the right or nullifying it, as it seems to do. The result does not simply entangle state law with federal law in the

---

[6] 28 U. S. C. § 371, derived from § 9 of the Judiciary Act of 1789, is a recognition by Congress that the states may exercise whatever jurisdiction the common law had concurrently with admiralty. See *Waring* v. *Clarke,* 5 How. 441, 460–461. However, since "It is not a remedy in the common-law courts which is saved, but a common-law remedy," *The Moses Taylor,* 4 Wall. 411, 431, it has been held that where suit is brought under the saving clause the right to be enforced is that "recognized by the law of the sea." *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372, 384. "The general rules of the maritime law apply whether the proceeding be instituted in an admiralty or common-law court." *Carlisle Packing Co.* v. *Sandanger,* 259 U. S. 255, 259. The commentators recognize this to be the rule now, 1 Benedict on Admiralty (6th ed.) 53–55; Stumberg, Maritime Cases in Common-law Courts (1925) 3 Tex. L. Rev. 246; Mole and Wilson, A Study of Comparative Negligence (1932) 17 Corn. L. Q. 333, 353–355, though the matter seems not to have been decided prior to the *Chelentis* case. Cf. *The Hamilton,* 207 U. S. 398, 404.

substantive phase of the case. It entangles hypothetically applicable state law in one phase with federal law in another.

Regarding the case, as I do, as being controlled in its substantive aspect altogether by federal law, I do not think that law requires or should permit the result the Court reaches. Regardless of whether the so-called "agency" contract makes the operating company an "agent," an "owner pro hac vice," or technically something else in relation to the United States, the federal maritime law in my opinion well might hold responsible to an injured longshoreman one who has knowledge that such persons will come aboard and who undertakes to keep the vessel and its equipment in safe condition for their use.[7] More especially should such a rule apply when the person so undertaking is the only one constantly on board to observe the creation of hazardous risks in the vessel's daily routines and, in addition, has such a degree of control over their creation as the "agent" did here.

But, in any event, the same result should be reached on the basis of construction of the contract. Whether this is put upon the ground stated in the opinion of MR. JUSTICE DOUGLAS, that the "agent" became owner *pro hac vice,* or in the view of the contract taken in the *Hust* case,

---

[7] "One who does an act or carries on an activity upon land on behalf of the possessor thereof, is subject to the same liability, and enjoys the same immunity from liability, for bodily harm caused thereby to others within and outside the land as though he were the possessor of the land." Restatement, Torts, § 383.

"An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused, during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take." Restatement, Agency, § 355.

with reference to application of the Jones Act, is largely immaterial, perhaps only a matter of words.[8]

That view, incorporating the rule of the *Hearst* case,[9] we have only recently extended to apply in cases of coverage of the Social Security Act and the Fair Labor Standards Act. *United States* v. *Silk,* 331 U. S. 704; *Harrison* v. *Greyvan Lines, id.; Rutherford Food Corp.* v. *McComb,* 331 U. S. 722. While the liability here is not legislative in origin, nevertheless as in the *Hust* case, application of the common-law "control" test to defeat the longshoreman's remedy under the state procedure, as provided by § 9 of the Judiciary Act of 1789, cannot "be justified in this temporary situation unless by inversion of that wisdom which teaches that 'the letter killeth, but the spirit giveth life.' " 328 U. S. at 725.

Finally, in my opinion, the terms of the agreement in its provisions for indemnity confirm the conclusion that liability of the "agent" in such a case as this was contemplated. Not only is there broad indemnity "for all expenditures of every kind made by it in performing, procuring or supplying the services, facilities, stores, supplies or equipment as required hereunder," with specified exceptions not covering such liabilities as are now in question. The indemnity also expressly provided:

---

[8] In that case, assuming that the agreement made Hust, the injured seaman, an employee of the United States for purposes of ultimate control, in spite of the meticulous character of the differences between it and the Maritime Commission's standard contract, we said: "But it does not follow from the fact that Hust was technically the Government's employee that he lost all remedies against the operating 'agent' for such injuries as he incurred. This case, like *National Labor Relations Board* v. *Hearst Publications,* 322 U. S. 111, involves something more than mere application to the facts of the common-law test for ascertaining the vicarious responsibilities of a private employer for tortious conduct of an employee." 328 U. S. at 724.

[9] *National Labor Relations Board* v. *Hearst Publications,* 322 U. S. 111.

"To the extent not recovered from insurance, the United States shall also reimburse the General Agent for all crew expenditures (accruing during the term hereof) in connection with the vessels hereunder, including, without limitation, all disbursements for or on account of wages, extra compensation, overtime, bonuses, penalties, subsistence, repatriation, travel expense, loss or personal effects, maintenance, cure, vacation allowances, *damages or compensation for death or personal injury or illness,* and insurance premiums, required to be paid by law, custom, or by the terms of the ship's articles or labor agreements . . ." (Emphasis added.)

as well as for payments made to pension funds and for social security taxes. This clause specifically contemplated that the "agent" should be responsible for paying claims not only for maintenance and cure but also for "damages or compensation for death or personal injury or illness," and should be indemnified for such payment. A narrow construction, of course, would limit the provisions for payment and indemnity to payments made without resort to suit. On the other hand, even a literal interpretation would cover payments made by the "agent" upon judgments recovered against it on claims of the character specified. I know of no good reason why the narrow view should be accepted or why the Government by its contract should desire to uproot seamen and others, including longshoremen insofar as they have acquired seamen's rights aboard ship, from their normally applicable remedies, in the absence of either explicit statutory command or express contractual provision to that effect. Moreover, in view of the scope of the indemnity provided, I see no possible harm that could be inflicted on the "agent" from interpreting the contract so as to allow the normally applicable remedies to apply.

Accordingly, I would reverse the judgment of the Court of Appeals.