PETER J. HEALEY, Plaintiff, *v.* SPRAGUE STEAMSHIP COMPANY, Defendant.

Supreme Court, Trial Term, New York County, December 22, 1947.

*William L. Standard* for plaintiff.

*Barry, Wainwright, Thacher & Symmers* for defendant.

STEUER, J. Plaintiff, a seaman on the S. S. *Trumbull,* met with an accident while on shore leave in the port of Marseilles. He brings this action for maintenance and cure. While the evidence of the accident was not so complete as might be desired, in view of the circumstances it was satisfactory. That this type of accident gives rise to an action for maintenance and cure is now undoubted (*Aguilar* v. *Standard Oil Co.,* 318 U. S. 724).

The major question in the case is whether this defendant is liable for maintenance and cure. Defendant was not the owner of the ship. Its connection with the vessel was through what is now generally called a " General Agent Service Agreement " with the owner, the United States, through the medium of the War Shipping Administration. These contracts and their consequences have received intensive, though not altogether harmonious interpretation.

A brief review of those authorities deemed pertinent is in order. In *Hust* v. *Moore-McCormack Lines* (328 U. S. 707) a seaman brought suit under the Jones Act against an agent under one of these contracts. It was determined that the employer-employee relationship did not exist because the administrative acts of the acquisition of the vessel by the United States and the limited duties of the agent made the ship's company employees of the United States. It is further clear that the Jones Act refers solely to actions by a seaman against his employer. It was held nevertheless that the seaman could recover. The gravamen of the decision was that prior to the acts by which shipping was acquired by the government, seamen had rights against the operator of the ship and that before the change of their status to government employees, by virtue thereof, could deprive them of such rights, there had to be clear statutory authority therefor. The holding is in effect that the agent as regards his tort liability to the seaman is the operator of the ship. A later holding (*Caldarola* v. *Eckert,* 332 U. S. 155) defined the latter proposition as the holding and specifically determined that it is a matter of State law as to whether the

control of the agent is sufficient to impose liability for injuries to business invitees of the ship. As maintenance and cure is an incident of contract and not a statutory right, the *Hust* case can hardly be controlling. No such question of contract has arisen in the State courts. There have been decisions in the United States courts. In two of them the issue was decided on the question of agency (*Shillman* v. *United States*, 73 F. Supp. 648, and *Lewis* v. *United States Nav. Co.*, 57 F. Supp. 652), the test of liability being whether the agent revealed the agency to the plaintiff. In the third (*Warren* v. *United States*, 75 F. Supp. 836), decision was based on the fact that despite the origin of maintenance and cure being contractual, its nature was so allied to compensation for injuries that to deny it would be incongruous with the *Hust* decision. Naturally, it would not be less incongruous if the agency were revealed so this decision does not represent an accord with the other two.

It is difficult to see how the agency principle is at all involved in the question. The contract is the shipping article. It is not signed by the agent company, but by the master (i.e., the captain) of the vessel. He is an employee of the United States and there is nothing in the document to show that he acted, or was authorized to act, in any other capacity. Furthermore, to hold on this basis is to mistake the shadow for the substance. The grounds for holding an undisclosed agent as a principal are that by his concealment the agent induces the other party to contract on the agent's responsibility and that in case of breach he prevents the other party from knowing against whom his rights lie. Neither of these grounds exists. In the *Hust* case the court took occasion to point out how seamen are hired. The agent notifies the union; the latter sends the men to the vessel. In the case at bar it appears in the testimony that the plaintiff gathered no impression from the shipping articles as to who his employer was and only after being assigned to duty on the ship was he told the name of the agent company. So that he was not induced to sign on in the belief that defendant was the other contracting party. As to being unaware of the proper party to sue for a breach, it is true that he may have been unaware of what was general knowledge, viz., that all shipping was in government hands. But no one was better informed of the situation than his attorney and few plaintiffs have been more ably represented. The conclusion is that to answer the question of defendant's responsibility by whether or not the word " agent " appeared in the shipping articles is sound, neither legally nor actually.

It is true that to deny maintenance and cure in a situation where responsibility under the Jones Act exists would be incongruous. But this is only so where the courts are in the same jurisdiction, conforming to the same pattern of law. When the *Caldarola* case was before the Court of Appeals (295 N. Y. 463, affd. 332 U. S. 155, *supra*), that court pointed out that it was unnecessary to the decision to determine whether, if the *Hust* case decided anything beyond liability under the Jones Act, it should be followed in this State and that question was specifically left open. On the particular question involved here the determination depends solely on the interpretation of the General Agency Contract. On this subject a contract with the United States, the United States Supreme Court is the final arbiter (*S. R. A., Inc.,* v. *State of Minnesota,* 327 U. S. 558). While the instant conclusion depends on a prediction, arrived at through deduction, as to what two appellate courts will decide, and hence is necessarily tenuous in its nature, no other means is apparent. That conclusion is that a parity of reasoning requires the holding that the General Agency Contract imposes liability on the agent for seaman's maintenance and cure.

There remains for determination the extent of plaintiff's recovery. In the many items involved this has been simplified by the co-operative impartiality and the great familiarity with the factual and legal procedures shown by both counsel. Plaintiff is entitled to wages to the end of the voyage, amounting to $105, with interest from the date of the conclusion of the voyage. His damage for loss of clothing comes to $50. His other claims, except as discussed below, are denied.

There is no claim for cure. Plaintiff was treated in marine hospitals without charge up to April 12, 1945. His further treatment was as a veteran for which he was not charged. The claim is for maintenance. This he would be entitled to until he received the maximum cure which his injuries would permit. The rate of maintenance is not fixed. By consideration of existing conditions, the amount fixed in the union agreement for shore maintenance as incidental to a voyage, and the amounts usually allowed by courts regularly dealing with this question, the conclusion is that $4 per day would be proper. Plaintiff received maintenance up until April 12, 1945, while he was a hospital patient. He continued as an outpatient to June 11, 1945, at which time the doctors at the Marine Hospital were of the opinion that he had sixty days more disability, at which time he would reach the maximum

cure. He discontinued his visits to the Marine Hospital on the claim that the carfares were beyond his means. On February 5, 1947, he returned to the hospital for two days and shortly thereafter applied to the Veteran's Administration for hospitalization. He was treated as an outpatient until about July 1947, when an operation was decided upon and performed. At the time of bringing the suit he was recuperating from the effects of this operation and at the time of trial he had not entirely recovered, though his doctor expected such a result shortly.

From the above it is quite clear that the right to maintenance from April 12 to June 11, 1945, is not disputable. It is not clear that continued visits would have shortened the estimated period of disability which would extend the period to August 10, 1945. The great question is whether the operation performed at Halloran General Hospital brought about any cure. It did not appear that at the date of trial plaintiff had made any progress in locomotion. In fact his condition was somewhat worse in this respect than prior to the operation, though it was claimed this would shortly improve. He did testify that he was relieved from pain to a great extent by the operation. The conclusion reached is that plaintiff did not establish in the conflict of medical opinion that the operation brought about any substantial improvement. He, therefore, reached the maximum cure on August 10, 1945, and his maintenance would amount to $480. This amount would carry interest from August 10, 1945.

Judgment for plaintiff for $635, with interest as indicated.