**DICHMANN, WRIGHT & PUGH, Inc. v. WEADE et al.**

No. 5696.

Circuit Court of Appeals, Fourth Circuit.

May 13, 1948.

Leon T. Seawell, of Norfolk, Va. (R. M. Hughes, Jr., of Norfolk, Va., on the brief), for appellant.

Walter E. Hoffman, of Norfolk, Va. (Breeden & Hoffman, of Norfolk, Va., Michael F. Keogh, of Washington, D. C., and Edw. L. Breeden, Jr., of Norfolk, Va., on the brief), for appellees.

H. G. Morison, Asst. Atty. Gen., and J. Frank Staley and Leavenworth Colby, Sp. Assts. to the Atty. Gen., for the United States, as amicus curiae.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

In civil actions before a jury in the United States District Court for the Eastern District of Virginia verdicts were returned and judgments entered in favor of the plaintiffs (appellees herein). Lillian Weade recovered judgment for $50,000; Frederick Weade (her husband) for $1,000, and Roberta Stinemeyer for $5,000. The defendant, Dichmann, Wright & Pugh (hereinafter called Dichmann) has appealed to us.

On August 4, 1945, Mrs. Weade and Mrs. Stinemeyer purchased tickets at Old Point, Virginia, and there embarked on the steamboat Meteor, bound for Washington. About 11 p. m. they retired in stateroom 116, Mrs. Weade occupying the lower berth and Mrs. Stinemeyer the upper berth. The weather was warm so the door of the stateroom was left ajar and the window looking out upon the boat deck was opened. About 3 o'clock in the morning, a negro named Jack Barnes, second cook on the Meteor, entered the stateroom through the window, raped Mrs. Weade and left the room by the window. Barnes was subsequently tried, convicted and executed.

The Meteor was owned by the United States and had been requisitioned through the War Shipping Administration. On January 9, 1943, the War Shipping Administration entered into a contract with Dichmann, Wright & Pugh, Incorporated, for the operation by Dichmann of vessels assigned to it. On July 30, 1945, by a supplemental agreement the Meteor was added to the list of vessels assigned to Dichmann.

This contract of January 9, 1943, was designated "Service Agreement for vessels of which the War Shipping Administration is owner or owner pro hac vice." We quote two of the most important articles of this contract:

"Article 1. The United States appoints the General Agent as its agent and not as an independent contractor, to manage and conduct the business of vessels assigned to it by the United States from time to time."

"Article 3A (d) The General Agent shall procure the Master of the vessels, operated hereunder, subject to the approval of the United States. The Master shall be an agent and employee of the United States, and shall have and exercise full control, responsibility and authority with respect to the navigation and management of the vessel. The General Agent shall procure and make available to the Master for engagement by him the officers and men required by him to fill the complement of the vessel. Such officers and men shall be procured by the General Agent through the usual channels and in accordance with the customary practices of commercial operators and upon the terms and conditions prevailing in the particular service or services in which the vessels are to be operated from time to time. The officers and members of the crew shall be subject only to the orders of the Master. All such persons shall be paid in the customary manner with funds provided by the United States hereunder."

The verdicts were rendered by the jury under a charge by the District Judge: "Under the law of this case, by virtue of the contract which I have referred to, the defendant, Dichmann, Wright & Pugh, is what is known as a common carrier, or engaged in business as a common carrier, perhaps is more correctly the case, and by virtue of having purchased tickets and boarded the Steamship Meteor for the purpose of being transported to Washington, the plaintiffs, Mrs. Weade and Mrs. Stinemeyer, became and throughout the voyage continued to be what are known as passengers."

The jury was further instructed that Dichmann (as a common carrier) owed to Mrs. Weade and Mrs. Stinemeyer (as passengers) the duty to "use the utmost or highest degree of practicable care and diligence under the circumstances existing."

Dichmann is liable to the plaintiffs here if, but only if, we can read "the contract so as to find the Agents to be owners pro hac vice in possession and control of the vessel." Mr. Justice Frankfurter, in

Caldarola v. Eckert, 332 U.S. 155, 159, 67 S.Ct. 1569, 1571, 91 L.Ed. 1968.

In a letter to counsel, dated June 3, 1947, the District Judge stated:

"Upon consideration of the above cases I am of the opinion that the verdicts of the jury should not be set aside.

"While the case of Hust v. Moore-McCormack Lines, Incorporated, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, is not precisely in point, it is my view that it is controlling so far as the liability of the defendant is concerned."

In a subsequent letter, dated July 28, 1947, the District Judge wrote:

"I have also examined the opinion in the Caldarola case.

"It is my conclusion that the questions involved in the cases under consideration are not governed by the decision in the Caldarola case."

We think that the Caldarola case is decisive here and requires us to reverse the judgments of the District Court.

In the majority opinion of Mr. Justice Frankfurter in the Caldarola case, 332 U.S. at page 159, 67 S.Ct. at page 1571, we find:

"Petitioner insists, in order to enable him to sue in the courts of New York, that the Agents are to be deemed, as a matter of federal law, owners of the vessel pro hac vice and, therefore, as a matter of State law, subject to the duties of such ownership under New York law toward business invitees. We reject this construction.

"Our previous decisions do not require it. Hust v. Moore-McCormack Lines, supra, arose under the Jones Act. Act of March 4, 1915, 38 Stat. 1185, as amended, June 5, 1920, 41 Stat. 1007, 46 U.S.C.A. § 688. We there held that under the Agency contract the Agent was the 'employer' of an injured seaman as that term is used in the Jones Act, and a seaman could therefore bring the statutory action against such an 'employer.' The Court did not hold that the Agency contract made the Agent for all practical purposes the owner of the vessel. It did not hold that it imposed upon him, as a matter of federal law, duties of care to third persons, more particularly to a stevedore under employment of a concern

unloading the vessel pursuant to a contract with the United States."

■ True it is that in the Caldarola case, four justices dissented and Mr. Justice Douglas in his dissent (Mr. Justice Black and Mr. Justice Murphy concurring) wrote: "For the reasons stated in my separate opinion in Hust v. Moore-McCormack Lines, 328 U.S. 707, 734, 66 S.Ct. 1218, 1231, 90 L.Ed. 1534, I think that respondents were owners pro hac vice of the vessel since the business of managing and operating it was their business. They were, therefore, principals and liable to petitioner, a longshoreman who was injured while working on the deck of the vessel by reason of the breaking of a cargo boom, part of the ship's gear."

But we are not at liberty to decide what merit therein lies. The Supreme Court, in the majority opinion, has spoken and we must follow. See, also, McGowan v. J. H. Winchester & Co., 78 F.Supp. 507.

■ The agency contracts in the Hust and Caldarola cases were substantially similar to the contract in the instant case. We find no reason for differentiating the instant case from the Caldarola case on the grounds advanced by plaintiffs that here the United States did not exercise powers of supervision and control as fully as were warranted by the contract and that in actual practice Dichmann assumed functions of management which were broader than the terms of the contract might specify.

In the Caldarola case, Caldarola was an employee of a stevedoring concern engaged in unloading ships under a contract with the United States. The Supreme Court characterized him as a business invitee. Justice Frankfurter's opinion (332 U.S. at page 159, 67 S.Ct. at page 1571) mentioned "duties of care to third persons, more particularly to a stevedore." We see no reason for not following the Caldarola doctrine merely because Mrs. Weade and Mrs. Stinemeyer were passengers and not invitees, particularly as an even higher duty is owed to a passenger than to an invitee.

■ Since the defendant in the instant case moved for judgment notwithstanding the verdict, we are not limited to the granting of a new trial and defendant is entitled

to have judgment entered in its behalf. Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849.

Our decision indicated above makes it unnecessary for us to consider or decide other questions raised in this case. We, of course, express no opinion as to the rights of the plaintiffs in this case to proceed against the United States.

The judgment appealed from will be reversed with direction that judgments be entered exonerating the defendant Dichmann of liability.

Reversed.