## PALARDY v. AMERICAN–HAWAIIAN S. S. CO.

### No. 9592.

Circuit Court of Appeals
Third Circuit.

Argued June 23, 1948.

Decided Aug. 4, 1948.

Abraham E. Freedman, of Philadelphia, Pa. (Milton M. Borowsky, Charles Lakatos, and Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), for appellant.

Thomas E. Byrne, Jr., of Philadelphia, Pa. (John A. Friedrich and Krusen, Evans & Shaw, all of Philadelphia, Pa., on the brief), for appellee.

---

Leavenworth Colby, Sp. Asst. to Atty. Gen. (H. G. Morison, Asst. Atty. Gen., and J. Frank Staley, Sp. Asst. to Atty. Gen., Admiralty and Shipping Section, Department of Justice, on the brief), amicus curiæ.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Albert J. Palardy, is a longshoreman-carpenter who was employed by the Luckenbach Steamship Company in connection with the loading of the cargo of the S. S. Niantic Victory at Philadelphia on June 20, 1946. He was injured in the course of his work on that day as the result of the alleged negligent disconnecting by a member of the crew of the vessel of an extension electric light which had been illuminating the hold in which he was at work shoring up cargo. The Niantic Victory was owned by the United States and had been assigned to the defendant, American-Hawaiian Steamship Company, as general agent for the United States under the standard form of general agency service agreement in use by the War Shipping Administration during the war.[1] Palardy instituted a suit in admiralty in the district court for the Eastern District of Pennsylvania against the United States to recover for his injuries. He also instituted in the same court the present civil action against the defendants seeking the same recovery. From a judgment upon a directed verdict for the defendant he brings the appeal now before us.

The trial judge directed a verdict for the defendant upon two grounds. First he held that under the rule laid down in Caldarola v. Eckert, 1947, 332 U.S. 155, 67 S. Ct. 1569, 91 L.Ed. 1968, the defendant could not be held liable for the alleged tort of the crew member and, second, he ruled that there was no evidence of negligence on the part of any member of the crew which would support a verdict for the plaintiff in any event. Since we are satisfied that the trial judge's first ground was well taken we have no need to consider his second.

As we have had occasion to point out in two other cases decided this day, Aird v. Weyerhaeuser Steamship Company, 169 F.2d 606, and Gaynor v. Agwilines, Inc., 169 F.2d 612, a general agent for the United States, such as American-Hawaiian Steamship Company, acting under the standard form of general agency service agreement in use during the period in question is not an operating agent or owner pro hac vice of the vessel assigned to it but rather is a shoreside agent or ship's husband employed to manage the business of the vessel. The possession of the vessel and its management and operation remain with the United States through its direct employee and agent, the master.

Under these circumstances the general agent does not owe a duty of care to third persons with respect to the management and operation by the master and crew of the vessel assigned to it by the government. It was expressly so held by the Supreme Court in Caldarola v. Eckert, 1947, 332 U.S. 155, 159, 67 S.Ct. 1569, 91 L.Ed. 1968, the case relied upon by the trial judge and which involved a claim by an injured longshoreman against the general agent of the government merchant vessel upon which he was injured. Upon the authority of that case the judgment in this case must be affirmed.

The plaintiff, however, strongly urges that certain evidence offered in the present case establishes that the defendant was in possession of the Niantic Victory and, therefore, he argues, the Caldarola case is not applicable. He refers to the certificate of delivery which passed between the War Shipping Administration and the defendant on May 18, 1944 at Portland, Oregon, and the certificate of redelivery which passed between the same parties on November 6, 1946 at Boston, Massachusetts. We think, however, that the presence of these certificates in evidence did not lay the basis for finding that the defendant was owner pro hac vice of the Niantic Victory contrary to the ruling of the Caldarola case. On the contrary it appears that the Supreme Court had similar

---

delivery certificates before it in the Caldarola case. For the plaintiff in the case before us concedes that Caldarola brought the existence of such certificates to the attention of the Supreme Court in the petition for rehearing which he filed in that case and urged that in view of them the court's ruling that Eckert was not in possession of the vessel should be reconsidered. The Supreme Court, however, denied Caldarola's petition for rehearing, 332 U.S. 784, 68 S.Ct. 30. Its action can only mean that it did not regard the certificates as controlling in this connection.

The certificates in question state that the S. S. Niantic Victory was "delivered" by the War Shipping Administration to the American-Hawaiian Steamship Company on May 18, 1944, and "redelivered" by the latter to the United States Maritime Commission on November 6, 1946 "under the terms and conditions of Contract WSA 206, service agreement Form GAA, said agreement having been executed March 6, 1942, having on board full stores and equipment as per inventories taken." Contract WSA 206, service agreement Form GAA, was the standard form of general agency service agreement which the parties had signed on March 6, 1942. As we have held in the Aird and Gaynor cases and as the Supreme Court indicated in the Caldarola case the general agent under that agreement does not acquire possession of the vessel or become owner pro hac vice but is merely a shoreside agent or ship's husband. As such, however, he is responsible for equipping, victualing, supplying and maintaining the vessel.[2] The use of the words "delivered" and "redelivered" read in the light of the express reference to the general agency service agreement must, therefore, refer to the beginning and end of the agent's responsibility for maintaining the vessel and providing it with necessary stores and equipment. Indeed the reference in each certificate to an inventory of the stores and equipment on board taken on the date of the certificate makes this even clearer. It was the stores and equipment on board, all of which were the agent's responsibility, with which the parties were primarily concerned. The vessel itself being in the physical possession of a direct employee of the government, the master, could not in fact have been the subject of delivery consistently with the agreement.

As a matter of fact the use of the word "deliver" is not uncommon in maritime contracts which do not contemplate the transfer of possession of the vessel involved. Thus the word used in a time or voyage charter has frequently been held not to evidence a demise or transfer of possession and control so as to impose liability for negligence of the master and crew.[3] As the Supreme Court of Oregon said in Grimberg v. Columbia Packers' Ass'n, 1905, 47 Or. 257, 270, 271, 83 P. 194, 199, 114 Am.St. Rep. 927, 8 Ann.Cas. 491, "So, with the stipulations concerning acceptance, delivery, and redelivery, considering the other conditions of the charter party. These terms are more readily reconcilable with the idea of their employment with reference to the commencement and termination of the charter party than that they portend a transfer of the possession, control, and management of the ship from one party to the other."

The judgment of the district court will be affirmed.

BIGGS, Circuit Judge (concurring).

For the reasons stated in my concurring opinion in Aird v. Weyerhaeuser, 169 F.2d 606. I concur in the result reached by this court.

---

[2] Article 3A (c) of the general agency service agreement provides:

"Article 3A. To the best of its ability, the General Agent shall for the account of the United States:
*    *    *    *    *    *    *
"(c) Equip, victual, supply and maintain the vessels, subject to such directions, orders, regulations and methods of supervision and inspection as the United States may from time to time prescribe;"

[3] Adams v. Homeyer, 1870, 45 Mo. 545, 551–553, 100 Am.Dec. 391; Grimberg v. Columbia Packers' Ass'n, 1905, 47 Or. 257, 270, 271, 83 P. 194, 199, 119 Am. St.Rep. 927, 8 Ann.Cas. 491; Clyde Commercial S. S. Co. v. West India S. S. Co., 2 Cir., 1909, 169 F. 275, 277; The Volund, 2 Cir., 1910, 181 F. 643, 665–667.