**LORAINE v. COASTWISE LINES,**
Inc., et al.
**No. 24518.**

United States District Court,
N. D. California, S. D.

July 14, 1949.

Fitz-Gerald Ames, Sr., San Francisco, California, for libelant.

John H. Black, Edward R. Kay, San Francisco, California, for respondent Coastwise Lines, Inc.

Bronson, Bronson & McKinnon, San Francisco, California, for respondent Mitchell Stevedoring Co.

ERSKINE, District Judge.

I am of the opinion that the plaintiff under the applicable law and under the facts is not entitled to recover in this action. It is plaintiff's contention that he is entitled to recover upon two theories:

1. Under the general maritime law, because his injury, he claims, was brought about by the unseaworthiness of the vessel upon which he was employed at the time of his claimed injury; and

2. Even if his recovery under the general maritime law is barred by laches he is entitled to recover for negligence of the defendants which he claims was the proximate cause of his injury.

Defendants offer several defenses in law and in fact, one of which is applicable to only one of the defendants. The defenses are these (commencing with a defense claimed by the defendant Coastwise Lines, Inc., but not applicable to Mitchell Stevedoring Company):

1. That under the Supreme Court decision in Caldarola v. Eckert, 1947, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, the defendant Coastwise Lines, Inc. was not the owner of the vessel, nor the employer of the plaintiff, and therefore was not responsible under the general maritime law or under the Jones Act, 46 U.S.C.A. § 688, for the alleged injury of the plaintiff claimed to have been received because of the unseaworthiness of the vessel, or because of the negligence of the owners of the vessel or of the other defendants.

2. That, even if there were any evidence to show that an injury was received by the plaintiff through the unseaworthiness of the vessel, plaintiff's claim for recovery thereon is barred by laches.

3. That the Jones Act is not applicable because the plaintiff was not at the time of the alleged injury an employee of either of the defendants, a basic requirement of the Jones Act.

4. That even if the Jones Act applied the plaintiff has not sustained the burden of proof that his injury, if any, was due to the negligence of either defendant; and

5. That the permanent injury which the plaintiff claims to have suffered was not connected with anything that may have happened to him on said vessel, but occurred from natural causes.

I feel that each and every one of the aforesaid contentions should be sustained.

█ (1) Plaintiff relied heavily upon the case of Hust v. Moore-McCormack Lines, 1946, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, as the basis for holding the defendant Coastwise Lines, Inc. responsible for his alleged injury. The vessel at the time of the alleged injury was owned by the United States and the defendant Coastwise Lines, Inc. was acting as the ship's husband thereof under a general agency contract with the War Shipping Administration, similar to that involved in the Hust and Caldarola cases. Since the submission of this case the Supreme Court of the United States has overruled the Hust case in the case of Cosmopolitan Shipping Company v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317. Based upon this opinion alone without regard to the other contentions of defendants which apply to each of the two defendants, it is the opinion of this Court that no recovery can be had against the defendant Coastwise Lines, Inc.

(2) I now come to the second contention of both defendants, to wit, that plaintiff is barred by laches from recovery for his alleged injury under the general maritime law. Plaintiff claims to have suffered his alleged injury on the vessel on March 10, 1943. This action was not commenced until March 6, 1946 and the Mitchell Stevedoring Company was not made a defendant until October, 1946, or thereabouts, at which time it was in the process of dissolution as a corporation.

█ In the absence of exceptional circumstances, plaintiff's action is barred by laches if the period between the date the alleged cause of action arose and the commencement of the action exceeds the period within which the action could have been brought in the state court (one year in California), unless it is shown that the defendant or defendants suffered no detriment by the delay. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210.

In this case the action was not commenced for three years, lacking four days, after the alleged cause of action arose, and the defendant Mitchell Stevedoring Company was not brought in for three and one-half years, or thereabouts. If we consider this action as one brought under the general maritime law it is clear under the evidence that the requisite elements—passage of time and detriment to the defendant—are present, and the doctrine of laches applies.

■ The evidence clearly shows that because of the delay defendants were deprived of the testimony of Olaf Martinson, who, at the trial and previous thereto, was unable to testify because of physical and mental infirmities occurring more than a year after the alleged accident to plaintiff. He was the mate in charge of the vessel at the time of the alleged accident, and it was his duty to rove about the vessel when he was on duty and to report in his log any untoward incident no matter how trivial. His log contained no report of plaintiff's alleged accident. Moreover, at the time of the trial and at the time of the filing of the complaint many of the incidents of March 10, 1943 had passed out of the minds of the stevedoring crew and the bosses thereof working on the vessel at or about the spot where plaintiff says he was injured, so that defendants had lost the benefit of their accurate recollection. Accordingly, because of the long delay in bringing this action and because particularly and presumptively the defendants were prejudiced by such delay, I must hold that if this action is to be considered as one brought under the general maritime law and not under the Jones Act it is barred by the laches of plaintiff.

In this connection plaintiff claims he was first represented by attorney Brooks Berlin, who advised him to file his claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and that he did not know until January 24, 1946 when he employed Mr. Fitz-Gerald Ames, his present attorney, that he had any remedy against a third party whose negligence may have caused his alleged injury. Even if this be true it is extremely doubtful if such an excuse is sufficient to answer the bar of laches. See McGrath v. Panama R. Co., 5 Cir., 1924, 298 F. 303; Wilson v. Smith, C.C.1902, 117 F. 707.

■ Moreover, where, under the terms of said Longshoremen's Act, compensation is payable to an injured person for an injury for which he claims a third person is liable, acceptance of such compensation pursuant to an award acts as an assignment of the claim to the employer's insurance carrier who pays the compensation. 33 U.S.C.A. § 933. U. S. Fidelity & Guaranty Co. v. U. S., 2 Cir., 1945, 152 F.2d 46; Moore v. Hechinger, 1942, 75 U.S.App.D.C. 391, 127 F.2d 746.

■ A short time after his injury plaintiff filed such a claim under the said Longshoremen's Act with the United States Employees' Compensation Commission and thereafter received from the insurance carrier of his employer, the Young's Patrol, the sum of approximately $5,700, a portion of which was pursuant to an award. This insurance carrier was the State Compensation Insurance Fund of California. Thus, a short time after the alleged injury, and on or before May, 1943, plaintiff by operation of law assigned his claim, if any he had, against the two defendants to the State Compensation Insurance Fund. Before the commencement of this action the plaintiff obtained a re-assignment of this claim from said Fund to him. By this re-assignment plaintiff stepped into the shoes of his assignor. Even if we assume plaintiff was ignorant of the law and that such ignorance would have been a sufficient excuse to eliminate the bar of laches as far as he is concerned if there had been no assignment to the Fund, as the assignee of the State Fund he takes such assignment subject to any defenses against the assigned claim which existed against it when owned by the Fund. Under the evidence, the State Fund was fully apprised of its rights as assignee of a claimant against a third party, or if it was not it should have been. It had a complete and thorough legal staff that was supposed to and did follow up any claim against a third party which had been assigned to it by virtue of the provisions of said Longshoremen's Act. There is nothing in the evidence in this case showing any excuse for the delay of more than one year in commencing this action. On the contrary the evidence shows that the State Fund never considered it had any valid claim against defendants, and therefore never started any action against them. For this reason, also, plaintiff as assignee of the State Fund is barred by laches if his claim is made under the general maritime law.

340

(3) This brings us to the third contention of the defendants, to wit, that if the plaintiff's cause of action is based upon the Jones Act, which would not be barred by the Statute of Limitations, he cannot recover thereunder. This follows from the fact that plaintiff was not an employee of either defendants at the time of his alleged injury, but was an employee of the Young's Patrol, a separate corporation.

Plaintiff in this respect relies upon Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. This case involved a longshoreman employed by an independent stevedoring company under contract to load a ship. The suit was a civil action on the law side against the shipowner, for injury sustained aboard the ship in consequence of hidden defects, and the general maritime law of tort was applied. There was no negligence proved, but it was found that the defect made the ship "unseaworthy". A verdict in favor of the shipowner was reversed by the Supreme Court. The significance of this case lies in the extension of the scope of the remedy for unseaworthiness horizontally so as to bring longshoremen within its purview. The opinion leans heavily on the fiction that longshoremen are "seamen" for purposes of suit under the Jones Act, advanced by International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, and extended the fiction to cases under the general maritime law. Thus, this Sieracki case is authority only for the proposition that a longshoreman, or any other person engaged in the duties customarily performed by a seaman, comes under the general maritime law and the Jones Act so far as they apply to seamen. Neither it nor any case referred to in it abrogate or purport to abrogate the rule that the Jones Act only applies where the relation of employer and employee exists.

Furthermore, if the Sieracki case purported to abrogate this rule, it is overruled on this point by Cosmopolitan Shipping Co. v. McAllister, supra, where it is clearly stated that a tort claim under the Jones Act can be enforced only against the employer.

Since the evidence shows virtually without conflict that plaintiff was not an employee of either of the defendants it would appear that plaintiff cannot recover in this action by virtue of the terms and provisions of the Jones Act.

(4) I now come to the above-mentioned fourth contention of the defendants, to wit, that even if the Jones Act applied to plaintiff's claim, plaintiff has not sustained the burden of proof of showing he was injured by reason of the negligence of either of the defendants. There is a well-recognized distinction between the requisite degree of proof in the case of an action based upon the Jones Act and one based upon the general maritime law arising out of unseaworthiness of a vessel. In the Sieracki case it is pointed out that the doctrine of unseaworthiness is not founded upon negligence but is a species of liability without fault and arises from the fact that the owner of the vessel or one standing in his shoes has employed the plaintiff to perform one of the functions of a seaman.

Even if the doctrine of seaworthiness applies in this case to plaintiff herein, he is barred from recovery by reason of laches if it is considered an action based upon the general maritime law (discussed supra). On the other hand, if plaintiff is to recover under the Jones Act he must show, as his part of the burden of proof, that the alleged injury occurred by reason of the negligence of defendants, or either of them. De Zon v. American President Lines, 9 Cir., 1942, 129 F.2d 404; Rey v. Colonial Navigation Co., 2 Cir., 1941, 116 F.2d 580; Gelb v. U. S., D.C.1948, 75 F. Supp. 833.

The evidence in this case falls far short of showing that the alleged injury to the plaintiff occurred by reason of the negligence of either of the defendants. In the first place the evidence shows that plaintiff was hired to perform the services of a hatch guard, and that his duty as such was to be down in the hold where the stevedore gang was receiving and stowing the freight and not on deck, where he claims he was situated at the time he claims to have received the alleged injury. In the second place, his claim is that at the time he received his injury he was standing within one or two feet of the

hatch coaming or barricade around the hatch to which he was assigned. This barricade is approximately 2½ or 3 feet high. He claims he was struck on the right leg between his ankle and knee by something which came out of the hatch, throwing him down and causing his left leg to come in contact with some object which caused the lacerations thereon. Assuming he had a right to be where he was when struck, which he did not have, it is difficult to understand how any line or chain coming out of the hatch could have struck him on his right leg between the knee and ankle or between eight and twelve inches from the floor of the deck on which he was standing, when there was a barricade within 12 or 24 inches immediately in front of him which was 30 to 36 inches high.

Futhermore, while plaintiff in his statements previous to the trial stated he was struck on his right leg by the chain on the bull hook which was on the line that lowered freight into the hatch and which line was being withdrawn from the hatch after the freight had been disengaged therefrom, in his testimony at the trial he said he did not know whether this chain had struck him. His statement in effect was that something struck him on the right leg and knocked him down and when he came to he felt a chain under him or near where he lay and he believed, therefore, that it was the bull hook chain that flew off and struck him. This evidence of course is not sufficient upon which to base a finding of negligence.

Furthermore, plaintiff says his injury occurred somewhere between 8:00 and 8:30 o'clock p. m., and that at that time there was being loaded into the hatch to which he was assigned steel plates, 8 feet by 5 feet, which are loaded by chains attached to the loading line. The documentary evidence shows that at the particular time tires were being loaded into that particular hatch, and the evidence shows that ropes, not chains, were used in that process. At that particular time such steel plates were being loaded into hatch No. 2 next in line to hatch No. 1 to which plaintiff had been assigned. If he were struck by the steel chain then being used in connection with the loading of these plates into hatch No. 2 he was not where he should have been, and to that extent was a trespasser, and therefore cannot complain.

Moreover, there is no evidence that what plaintiff claims befell him was caused by negligence of either of the defendants. The evidence in the case is devoid of any showing to that effect. In fact from the evidence it is doubtful whether plaintiff incurred his alleged injury on the vessel at all. He says he did, but there is no record that he or any one else on the vessel at the time reported it to the gangplank boss, or to the mate in charge to whom it should have been reported. Plaintiff testifies that after the injury he was given something resembling first aid and then placed in a reclining position close to the hatch coaming of hatch No. 1 with a pillow under his injured legs, so that he could still continue to watch and guard hatch No. 1, and that he remained there all night until quitting time about 6:00 o'clock a. m. If he were in such a position both winchmen who operated the loading of the freight into hatch No. 1 would have seen him and at least one would have seen the accident which he claims befell him. But nobody saw him hurt and there is no record of his remaining there all night propped up in the position above described, or that any one saw him in this position. On the contrary, the log of the mate of the ship who was on duty that night and whose duty it was to report any untoward incidents makes no mention of any injury to plaintiff, although it mentions a trifling injury to one of the hatch coverings by reason of a collision of some incoming freight therewith. However, no person who worked in or about that hatch that night could remember the alleged accident to plaintiff.

It is interesting to note that the State Compensation Insurance Fund apparently accepted plaintiff's claim for compensation without any investigation or inquiry respecting whether or not it was incurred while acting within the scope of his employment. Accordingly the fact that upon plaintiff's unsubstantiated and uninvesti-

gated claim alone he was paid compensation can be given scant consideration, if any, by this Court.

The foregoing and many other considerations based upon the evidence show that plaintiff has not sustained the burden of proof requisite under the provisions of the Jones Act to support any claim of negligence on the part of either of the defendants.

■■■ (5) I now come to the fifth above-mentioned contention of defendants to the effect that plaintiff has not sustained his burden of proof that any of the damage he claims to be suffering from was connected with his alleged accident. In this respect I must sustain the defendants' contention. There is a conflict in the evidence as to whether or not plaintiff returned to work on May 11th, the day following the accident. There is no need to resolve the conflict because the evidence shows without contradiction that shortly after his claimed injury the plaintiff visited the doctor of the State Compensation Insurance Fund who examined the lacerations on the calf of his left leg, treated them until they were healed, and discharged plaintiff as cured on or about April 9, 1943 and thereafter plaintiff returned to work and worked for several weeks thereafter.

The preponderance of the medical evidence shows that the permanent disability which plaintiff claims thereafter developed was not due at all to said lacerations or said claimed injury, but was due to a natural cause, to wit, intermittent claudication affecting the circulation in plaintiff's left leg.

Plaintiff has been amply compensated for any injury that may have occurred to him on said vessel, if such injury did occur. The State Compensation Insurance Fund which assigned the claim to him never considered or thought that it had a claim against the defendants or either of them under the evidence, and allowed any such claim to outlaw; neither it nor plaintiff as its assignee is entitled to any consideration in this case on the ground that it paid compensation with scant, if any, investigation of the facts.

For the foregoing reasons it is my opinion that the decree in this case should be for respondents. Let respondents prepare the necessary findings.