BURO v. AMERICAN PETROLEUM TRANSPORT CORPORATION (TOLLEF-SEN et al., Third-Party Defendant).

Civ. 7460.

District Court, E. D. New York.

Jan. 29, 1948.

Thomas O'Rourke Gallagher, of Brooklyn, N. Y. (Jacob Rassner, of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John L. Quinlan, of New York City, of counsel), for defendant and third-party plaintiff.

Reginald V. Spell, of New York City, for third-party defendant.

GALSTON, District Judge.

The defendant, American Petroleum Transport Corp., has moved for a summary judgment pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

On January 6, 1944 the S. S. William Penn docked at a pier near the foot of 125th Street in the Hudson River in the City of New York. The plaintiff was employed by the impleaded third-party de-

fendant. It is alleged that the plaintiff was on the ship on the morning in question, and while engaged in his work he slipped and fell through an opening of one of the tanks. It is charged that his injuries arose from the failure of the defendant to provide guards to prevent those lawfully on the vessel from falling into openings adjacent to their work, or which they had to pass or proceed to in performing their work.

The motion papers disclose that the defendant had entered into a General Agent agreement with the United States of America on December 3, 1942. On November 11, 1943 the William Penn was allocated for such purpose to the American Petroleum Transport Corp. Thereafter the defendant managed the vessel for the United States in accordance with the terms of the General Agency agreement and was so managing the William Penn at the time of the accident to the plaintiff. A copy of the agreement of December 3, 1942 is part of the moving papers. Therein it appears that the defendant designated "General Agent" was appointed as its agent and not as an independent contractor "to manage and conduct the business of vessels assigned to it by the United States from time to time". The nature of the obligations assumed by the General Agent included maintaining the vessels in such trade or service as the United States might direct, collecting of moneys due the United States under the agreement; equipping and victualizing and maintaining the vessels subject to directions, orders, supervision and inspection of the United States; procuring the Master of the vessel subject to the approval of the United States; procuring for the Master for engagement by him the officers and men required to fill the complement of the vessel, the officers and members of the crew being subject only to the orders of the Master; and issuing to ships customary freight contracts, bills of lading, etc.

In Article 14 it is provided that the General Agent shall arrange for the repair of the vessels. In Article 16 the United States undertakes to indemnify and hold harmless and defend the General Agent against any and all claims which may be asserted for injury to persons or

property arising out of or in any way connected with the operation of the vessels.

The William Penn is an oil tanker. The plaintiff's employer, Tollefsen Brothers, had contracted with the United States to clean the cargo tanks. The plaintiff was foreman of a gang of about 12 men sent on board to do the work. On the day of the accident the plaintiff entered a tank, going through a manhole on the main deck, and then down by a ladder which ran from the manhole to the top of the shaft alley tunnel. The top of the shaft alley tunnel is about half way down in the tank and about 25 feet from the bottom of the tank. The ladder runs from the side on the shaft alley tunnel to the bottom of the tank. Buro had reached the top of the shaft alley tunnel and was about to descend a second ladder when he slipped and fell to the bottom of the tank.

On this motion the defendant relies heavily on the decision of the Supreme Court rendered June 23, 1947 in Caldarola v. Eckert et al., 332 U.S. 155, 67 S.Ct. 1569, 1570. In that case it appears that the S. S. Everagra was owned by the United States, but was managed in its behalf by the defendants. This vessel docked in the North River and was being unloaded by a stevedoring concern. The unloading was under a contract made between the stevedoring company and the United States, negotiated by the War Shipping Administration. One of its provisions was that "the Administrator shall furnish and maintain in good working order all" necessary equipment. Caldarola was an employee of Jarka and was injured while working on the vessel for Jarka. He claimed that his injury was caused by a defective boom and sought to charge the defendants, as agents for failing in their duty to maintain the boom in sound condition. He instituted suit in the Supreme Court of the State of New York. A verdict for Caldorola was set aside by the Appellate Division, Caldarola v. Moore-McCormack Lines, 270 App.Div. 563, 61 N.Y.S.2d 164, with the New York Court of Appeals affirming, 295 N.Y. 463, 68 N. E.2d 444. The Supreme Court of the United States granted certiorari Caldarola

v. Eckert, 329 U.S. 704, 67 S.Ct. 195, because of conflict with Hust v. Moore-McCormack Lines, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534. After stating that the New York Court of Appeals could determine such issues of the case exclusively concerned with New York law, Mr. Justice Frankfurter went on to say that the interpretation of the contract between the United States and the agents was a matter "of federal concern" and "the United States * * * is not concluded by the meaning which the State court may find in it." The court then proceeded to interpret the contract and its legal effect, and said: "It is not claimed that an injured party has rights under the agency contract, or that it created duties to third persons. Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290. And so the narrow question is whether the Agents were in possession and control of the Everagra. This is the crucial issue, because liability in tort by the Agents for Caldarola's injury would only arise in New York when there is such possession and control of premises on which injury occurs, due to negligence in their maintenance. Cullings v. Goetz, 256 N. Y. 287, 176 N.E. 397."

The opinion recites that the rights of the injured seaman in Hust v. Moore-McCormack Lines supra arose under the Jones Act, 46 U.S.C.A. § 688, and that it was there held "that under the Agency contract the Agent was the 'employer' of an injured seaman as that term is used in the Jones Act, and a seaman could therefore bring the statutory action against such an 'employer.'"

Mr. Justice Frankfurter adds: "The Court did not hold that the Agency contract made the Agent *for all practical purposes the owner of the vessel*. It did not hold that it imposed upon him, as a matter of federal law, duties of care to third persons, more particularly to a stevedore under employment of a concern unloading the vessel pursuant to a contract with the United States." *

The applicable law is not too clearly indicated. In this Circuit, in Militano v.

---

* Italics mine.

United States, 2 Cir., 156 F.2d 599, 602, (decided before Caldarola v. Eckert supra) the court had before it a libel by a stevedore against the United States, and a civil action against the States Marine Corporation, which acted under a General Agency contract doubtless similar to the contract involved in this case. Militano's injuries were caused by splinters from the steel cable leading from the drum of the winch which he was operating. After considering Hust v. Moore-McCormack Lines supra, the court said: "If the Agent remains the employer sufficiently to be liable to members of the crew under the Jones Act, we think it cannot escape the duties of an owner pro hac vice in other respects. Thus it has the duty to furnish stevedores with a safe place to work, a duty which is analagous to that owed by a landowner to a business visitor."

The decision in Militano v. United States would certainly be conclusive in this case were it not for the distinction adverted to in Caldarola v. Eckert supra, for after considering Hust v. Moore-McCormack Lines supra, the court particularly stated that that case did not hold as a matter of federal law that the duty of the Agent under the Jones Act extended to third persons, more particularly to a stevedore in the employment of one unloading the vessel pursuant to a contract with the United States.

In view of the conflict which I find between Militano v. United States supra, and Caldarola v. Eckert supra, it seems that the motion for summary judgment should be granted. Submit order.