## MILITANO v. STATES MARINE CORPORATION.

District Court, S. D. New York.

April 13, 1948.

Jacob Rassner and Benjamin Green, both of New York City, for libelant-plaintiff.

John F. X. McGohey, U. S. Atty., and Corydon B. Dunham, both of New York City, for respondent-defendant.

HULBERT, District Judge.

The Circuit Court of Appeals (Second Circuit) affirmed a decree of this court (Militano v. United States, 156 F.2d 599) dismissing a libel in a suit in Admiralty against the United States of America, to recover damages for personal injuries, sustained by Joseph Militano, a longshoreman, employed on the docks at the United States Army Base in Brooklyn, New York. Militano was transferred to the S/S Benjamin Hawkins lying at one of the piers at the Army Base and loading government owned cargo, to operate a winch at hatch No. 5. The vessel, upon which Militano was injured, was owned by the United States of America and operated under a general agency agreement by defendant, States Marine Corporation.

At the time the Admiralty cause came on for trial, libelant's advocate requested that a civil action, brought against the operating agent of the vessel and then awaiting trial on the Jury Calendar, be heard at the same time. This was consented to, trial by a jury was duly waived and, at the conclusion of the case, the complaint was dismissed, and the judgment entered accordingly was reversed on appeal, the cause being remanded for further proceedings. 156 F.2d 599.

Both appeals were heard on the same record. A stipulation entered into between the litigants was not included therein, but for clarity, is quoted here from the stenographic minutes:

"Stipulated by and between the attorneys for the parties in the civil cause No. 24—344, plaintiff being present and having been first fully advised by his counsel, assenting hereto, that the trial of the issues in this cause to a jury is waived.

"Further stipulated by and between the Proctors for the respective parties in Admiralty cause No. 128—77 that this case may be taken from the Admiralty day calendar and consolidated for trial with the civil cause above mentioned."

The complaint in the civil action contained an allegation that it was predicated upon the Jones Act, 46 U.S.C.A. § 688. But counsel for the plaintiff conceded upon the trial that the Jones Act was inapplicable and, since there was no diversity of citizenship, the Court was without jurisdiction to hear and determine that cause. Upon the assumption that plaintiff might convert his claim into a suit in Admiralty, "stating an ordinary claim for negligence" it was so treated in order that plaintiff "might have his day in Court."

After trial, this Court in the civil action made, inter alia, two conclusions of law, quoted in the opinion of the Appellate Court. The Circuit Judge writing for that Court pointed out that the trial judge had stated in his opinion that he was unable to perceive upon what theory the States Marine Corporation could be held liable for negligence, and stated that he did not feel sure that the trial judge would have made the first finding quoted, if he had considered the States Marine Corporation, under its agency agreement, the owner pro hac vice.

The opinion of the Circuit Court of Appeals further points out that the rule of law applicable in this case was re-emphasized in Hust v. Moore-McCormack Lines, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534. In the instant case, this Court's opinion was dated and filed December 20, 1944.

The United States Supreme Court has since had occasion to express itself in Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, and the Circuit Court of Appeals (Second Circuit) in Shilman v. United States of America War Shipping Administration and Grace Line, Inc., 2 Cir., 1948, 164 F.2d 649, 653, certiorari denied, 1948, 68 S.Ct. 608 per A. N. Hand, C. J., (decided Dec. 4, 1947) stated:

"In neither the Hust nor the Caldarola decisions did the majority of the court hold the agent to be the owner of the vessel pro hac vice."

Cf. Buro v. American Petroleum Transport Corp. et al., D.C., 1948, 75 F.Supp. 371.

But it is neither necessary, nor does it seem appropriate, for this Court to inter-

440

pret the Hust or Caldarola cases as applied to this litigation. This Court has read and re-read and weighed and re-weighed the testimony in this case. The S/S Benjamin Hawkins was a vessel of recent construction and its equipment was new. It was provided with spare parts including an extra steel cable. When the plaintiff was transferred from the dock to the vessel as a winch operator, about 15 minutes before the accident happened, he lowered the draft and discovered when he attempted to raise it, that the cable was loose on the drum. He tried to adjust it and his gloved hand caught on the loose wire ends or "fish-hooks." These so-called "fish-hooks" are likely to appear at any time in the operation of the cable, from usage. The new spare cable was available for substitution. It is hardly to be expected that such substitution would have been ordered by the officers or crew of the ship as the agents or servants of the operating corporation, unless the presence of the "fish-hooks" had come to their attention or had been discovered with reasonable diligence.

But there is an additional factor in the plaintiff's case. According to his testimony he was endeavoring to adjust the loose cable on the drum. He did not suspend operation for that purpose; he did not call upon the ship's officers or crew; he undertook to do the job himself. As the cable continued to move, his glove caught in the "fish-hook" and his hand was dragged up to the gin block and drawn into it. There was an emergency foot brake in addition to the usual method, available to stop the drum instantly. The plaintiff failed to use it, but when the attention of a fellow servant was attracted by his outcry, he crossed over from the opposite winch and stopped the movement of the cable promptly by use of the foot brake.

This court cannot persuade itself, in the circumstances of this case, that the ship was unseaworthy, or that the injury to the plaintiff was due to any negligence on the part of the defendant, and accordingly makes the following amended findings of fact and conclusions of law:

1. That at all times mentioned in the complaint the defendant was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

2. At all times mentioned in the complaint, the United States of America owned a certain steamship known as the Benjamin Hawkins of American registry, flying the American flag, and engaged in the loading of Government owned cargo at an Army Base in Brooklyn, New York, for transportation to the armed forces of of the United States of America overseas.

3. By Executive Order No. 9054, 50 U.S. C.A.Appendix, § 1295 note, the President of the United States established a War Shipping Administration in the Executive Office of the President, and defined its functions and duties.

4. Through the Administrator of the War Shipping Administration, the United States of America entered into a service agreement with the defendant, as of August 10, 1942, whereby the defendant accepted the appointment as general agent and undertook, amongst other things, to manage and conduct for the United States, the S/S Benjamin Hawkins, in accordance with such directions, orders or regulations as had been from time to time, or might be, prescribed for the operation of said vessel.

5. The plaintiff was a citizen of the United States and a resident of the Borough of Brooklyn, County of Kings, City and State of New York, employed by the United States of America, as a longshoreman at the said Army Base, as a civil employee and engaged in the performance of his duties in that capacity.

6. That on the 19th day of January, 1943, about 15 minutes prior to the accident herein referred to, and while plaintiff was engaged in the performance of his duties as a longshoreman, he was transferred to said vessel to operate a winch drum at No. 5 hatch and, in so doing he sustained injuries to the index, middle and ring fingers of his left hand, which became caught in the gin block at the point where the winch cable passes through at the base of the boom used for raising and lowering drafts of cargo from the deck into the hold of said vessel, or vice versa.

**7.** The winch operated by the plaintiff was equipped with an emergency foot brake, for instant use.

**8.** Bianco, one of the plaintiff's co-workers, heard an outcry, looked around, saw the plaintiff in a crouching position holding one hand in the other, and immediately stopped the plaintiff's winch, as soon as he could cross the deck of the ship to do so, by applying the emergency foot brake, which the plaintiff had failed to do.

### Amended Conclusions of Law

**1.** Plaintiff has failed to make proof of facts which establish by a fair preponderance of the evidence that the defendant was responsible for his injuries by reason of the unseaworthiness of the vessel or of its negligence in the performance of any duty which it owed to him.

**2.** Upon the proof the plaintiff's negligence was the sole cause of the accident.

**3.** Defendant is entitled to a judgment dismissing the complaint.