## GAYNOR v. AGWILINES, Inc.
### No. 9580.

Circuit Court of Appeals
Third Circuit.

Argued Feb. 18, 1948.
Decided Aug. 4, 1948.

Writ of Certiorari Granted Nov. 22, 1948.
See 69 S.Ct. 162.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman, Landy & Lorry, of Philadelphia, Pa., on the brief), for appellant.

Thomas E. Byrne, Jr., of Philadelphia, Pa. (Rowland C. Evans, Jr., and Krusen, Evans & Shaw, all of Philadelphia, Pa., on the brief), for appellee.

Leavenworth Colby, Sp. Asst. to Atty. Gen., (H. Geo. Morison, Acting Asst. Atty. Gen., and J. Frank Staley, Sp. Asst. to Atty. Gen., Admiralty and Shipping Section, Department of Justice, on the brief), for amicus curiae.

Before BIGGS, MARIS, GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, Isaac Gaynor, an American seaman, on September 10, 1945, signed shipping articles as a member of the crew of the S. S. Christopher Gadsden for a foreign voyage from Philadelphia for a period not exceeding twelve months. The Christopher Gadsden was a vessel built and owned by the United States and was being operated for the United States by the War Shipping Administration which had appointed the defendant Agwilines, Inc. as general agent for the vessel under the standard form of general agency service agreement in use during World War II.[1]

On December 24, 1945 the Christopher Gadsden put in at the port of Charleston, South Carolina. While it was in port the plaintiff obtained shore leave and left the vessel intending to visit relatives in Rand, South Carolina. En route from Charleston as a passenger on a bus on December 25, 1945 he was injured in a highway accident as a result of which he was so disabled as to be unable to rejoin the ship or re-engage in his occupation as a seaman. He was paid his wages from September 10 to December 28, 1945. Thereafter he brought the present civil action against the defendant in the district court for the Eastern District of Pennsylvania for the balance of his wages to the end of the voyage, for maintenance and cure for the period of his disability, and for the value of his clothing and personal effects which he left on the vessel and which had not been returned to him. He sought the same relief against the United States in an admiralty suit which he filed in the same court under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The district court dismissed the present complaint without prejudice upon the ground that the plaintiff's sole remedy was his suit in admiralty against the United States and that under the War Shipping Administration Clarification Act he was precluded from enforcing his claim against the defendant, the general agent of the War Shipping Administration. The case thus presents for our consideration the meaning and effect of the Clarification Act of March 24, 1943, 57 Stat. 45, 50 U.S.C.A. Appendix, § 1291, the pertinent provisions of which are set out in a footnote.[2]

---

[1] The form of agreement was in all essential respects the same as that which was before the court in Caldarola v. Eckert, 1947, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968. It was authorized by General Order 21 of the War Shipping Administration issued September 22, 1942, 7 F.R. 7561, and also appears in full text in 46 C.F.R. Cum.Supp. § 306.44.

[2] "That (a) officers and members of crews (hereinafter referred to as 'seamen') employed on United States or

Upon reading the act certain things are at once clear. The first is that it applies only to seamen who are employees of the United States. The second is that its purpose was to make certain that such federally employed seamen are not to be regarded as employees of the United States for the purposes of the United States Employees Compensation Act, 5 U.S.C.A. §§ 751 et seq., the Civil Service Retirement Act, 5 U.S.C.A. § 691 et seq. the Act of March 7, 1942, 50 U.S.C.A. § 1001 et seq., relating to the pay of certain government employees, or the Act of December 2, 1942, 42 U.S.C.A. § 1701 et seq., providing benefits for the injury, disability, death or detention of employees of contractors of the United States. Instead the act specifically provides that such federally employed seamen shall with respect to the laws administered by the Pub-lic Health Service, the Social Security Act, 42 U.S.C.A. § 301 et seq., claims for death, injuries, illness, maintenance and cure, loss of effects, detention, repatriation, collection of wages and bonuses and making of allotments have all of the rights, benefits, exemptions, privileges, and liabilities under law applicable to American seamen employed on privately owned and operated vessels. In other words, the purpose of the act was to provide that seamen, even though they are federal employees, should not in these respects have the normal rights, benefits and privileges of federal employees but should have instead the rights, benefits and privileges of privately employed seamen.

Having thus defined the rights and privileges of federally employed seamen as being those of seamen privately employed the act goes on to provide that with respect to such

---

foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to (1) laws administered by the Public Health Service and the Social Security Act, as amended by subsection (b) (2) and (3) of this section; (2) death, injuries, illness, maintenance and cure, loss of effects, detention, or repatriation, or claims arising therefrom not covered by the foregoing clause (1); and (3) collection of wages and bonuses and making of allotments, have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels. Such seamen, because of the temporary wartime character of their employment by the War Shipping Administration, shall not be considered as officers or employees of the United States for the purposes of the United States Employees Compensation Act, as amended; the Civil Service Retirement Act, as amended; the Act of Congress approved March 7, 1942 (Public Law 490, Seventy-seventh Congress) or the Act entitled 'An Act to provide benefits for the injury, disability, death, or detention of employees of contractors with the United States and certain other persons or reimbursement therefor', approved December 2, 1942 (Public Law 784, Seventy-seventh Congress). Claims arising under clause (1) hereof shall be enforced in the same manner as such claims would be enforced if the seaman were employed on a privately owned and operated American vessel. Any claim re-ferred to in clause (2) or (3) hereof shall, if administratively disallowed in whole or in part, be enforced pursuant to the provisions of the Suits in Admiralty Act, notwithstanding the vessel on which the seaman is employed is not a merchant vessel within the meaning of such Act. Any claim, right, or cause of action of or in respect of any such seaman accruing on or after October 1, 1941, and prior to the date of enactment of this section may be enforced, and upon the election of the seaman or his surviving dependent or beneficiary, or his legal representative to do so shall be governed, as if this section had been in effect when such claim, right, or cause of action accrued, such election to be made in accordance with rules and regulations prescribed by the Administrator, War Shipping Administration. Rights of any seaman under the Social Security Act, as amended by subsection (b) (2) and (3), and claims therefor shall be governed solely by the provisions of such Act, so amended. When used in this subsection the term 'administratively disallowed' means a denial of a written claim in accordance with rules or regulations prescribed by the Administrator, War Shipping Administration. When used in this subsection the terms 'War Shipping Administration' and 'Administrator, War Shipping Administration' shall be deemed to include the United States Maritime Commission with respect to the period beginning October 1, 1941, and ending February 11, 1942, and the term 'seaman' shall be deemed to include any seaman employed as an employee of the United

claims for injuries, maintenance and cure, loss of effects and collection of wages and bonuses, inter alia, the seamen's rights, if administratively disallowed, shall be enforced pursuant to the provisions of the Suits in Admiralty Act, which means by suit in admiralty in personam against the United States. The federally employed seaman is to be entitled to enforce his rights in this way even though the vessel on which he is employed is technically a public vessel of the United States rather than a government merchant vessel or tugboat in which case under the strict terms of the Suits in Admiralty Act [3] a suit would not lie against the United States with respect to the seaman's claim.

■ We think that it was the intent of Congress, when by the Clarification Act it gave to federally employed seamen the rights of private seamen, to restrict the enforcement of the rights thus given to the suit in personam in admiralty against the United States which the Suits in Admiralty Act authorizes. The seamen's rights were to be measured by those of seamen employed by private ship owners rather than by those of other employees in the government service. But since by hypothesis the seamen in question were in fact employees of the United States and not of private ship owners the rights which were thus given them must necessarily be enforced against their employer, the United States. In reaching this conclusion we are fortified by the legislative history of the act.[4]

---

States through the War Shipping Administration on vessels made available to or subchartered to other agencies or departments of the United States."

[3] Section 2 of the Suits in Admiralty Act reads in part as follows: "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against any corporation mentioned in section 741 of this title, as the case may be, provided that such vessel is employed as a merchant vessel or is a tugboat operated by such corporation." 46 U.S.C.A. § 742.

[4] The Committee on the Merchant Marine and Fisheries of the House of Representatives in reporting the bill H.R. 7424, which upon reintroduction in the 78th Congress as H.R. 133 became the Clarification Act, discussed in its report (H. Rep. 2572, 77th Cong. 2d Sess.) the problem arising out of the employment of seamen by the War Shipping Administration on vessels "owned by or bareboat-chartered to it." The Committee said (p. 8):

"Because of the fact that seamen employed directly by the War Shipping Administration on vessels owned by or bareboat-chartered to it have the status of government employees the Administrator has not been able under existing law to carry out entirely his intended policy of maintaining the peacetime status of seamen in so far as seamen's rights to compensation for injuries, and so forth, wage credits toward social security benefits and various other benefits which seamen have enjoyed and to which they are entitled. The purpose of section 1 of the bill is to correct the situation so as to permit the complete extension into this area of the basic policy of maintaining the private status of merchant seamen for the duration of the war. Section 1 deals with the rights and benefits of seamen who are government employees by virtue of employment through agents of the War Shipping Administration."

The Committee report continued (pp. 12–14):

"A seaman who falls ill or is injured in the service of the ship has, as an incident to his employment and without regard to fault, the right to receive from the shipowner wages and maintenance and cure. The ill or injured seaman gets wages as if he had completed the voyage, and he receives food and lodging (or an equivalent monetary allowance) and treatment at a United States marine hospital * * *

"All of these rights for which court action lies, although maritime in nature, may be enforced either in Federal or State courts. The suits may be brought in admiralty if the seaman so desires, and may then be in rem. No jury is had in admiralty proceedings.

* * * * * * *

"Under section 1 officers and members of crews employed in vessels by or on behalf of the United States through the War Shipping Administration are for the purpose of determination of the rights and benefits of such seamen and their dependents or beneficiaries referred to those provisions of statutory and

This, of course, is not to say that federally employed seamen may never have the right to sue anyone other than the United States upon a cause of action growing out of their employment. For if the United States should employ a private person as its agent to operate a government vessel and in the course of the operation of the vessel by the agent a tort should be committed he might well be liable in damages to those injured thereby.[5] Likewise if such an operating agent should employ seamen on the vessel being operated by him under shipping articles which indicated that he was operating owner of the vessel and did not disclose that he was acting for the United States, he might well be liable to the seamen for wages and maintenance and cure.[6] But such claims as these would not be based upon the rights conferred on the seamen by the Clarification Act but rather upon rights which the seamen would have had even if the Clarification Act had never been passed. It follows that unless the plaintiff can establish

---

general maritime law which are applicable to seamen in private employment.

\* \* \* \* \* \* \*

"The various rights and remedies under statute and general maritime law with respect to death, injury, illness and other casualty to seamen, have been \* \* \* fully set forth \* \* \*. Under clause 2 of section 1 (a) these substantive rights would be governed by existing law relating to privately employed seamen. The only modification thereof arises from the remedial provision that they shall be enforced in accordance with the provisions of the Suits in Admiralty Act. This procedure is appropriate in view of the fact that the suits will be against the Government of the United States. In such a suit no provision is made for a jury trial as may otherwise be had in a proceeding such as one under the Jones Act for reasons set forth in the letter of the Attorney General (September 14, 1942). The provision of the Suits in Admiralty Act that suit lies thereunder only if the ship involved is employed as a merchant vessel or a tugboat is waived for the purposes of section 1 so that the claim may be enforced regardless of the nature of the vessel on which the seaman is serving as an employee of the War Shipping Administration. To prevent unnecessary or premature litigation against the United States, it is required that before suit there shall be an administrative disallowance of the same in accord with rules and regulations to be prescribed by the Administrator, War Shipping Administration.

"Other claims under clauses 2 and 3, such as claims for maintenance and cure, collection of wages and bonuses, and making of allotments, shall also be enforced under the Suits in Admiralty Act."

In the report of the Senate Committee on Commerce upon the bill (S. Rep. 1813, 77th Cong. 2d Sess.) it was said (p. 6):

"The substantive rights under statute and general maritime law with respect to death, injury, or other casualty to seamen employed by the War Shipping Administration would, under section 1, be controlled by the existing law relating to privately employed seamen. The only modification thereof is that the rights shall be enforced in accordance with the provisions of the Suits in Admiralty Act. Other claims, such as claims for maintenance and cure, collection of wages and bonuses, and making of allotments, would also be enforced under that act."

H. R. 7424 did not pass in the 77th Congress and was reintroduced in the 78th Congress as H. R. 133. In reporting the latter bill the House Committee in its report (H. Rep. 107, 78th Cong. 1st Sess.) said (p. 2):

"Such seamen will have the right to enforce claims for these benefits according to the procedure of the Suits in Admiralty Act \* \* \*."

Likewise the Senate Committee in its report (S. Rep. 62, 78th Cong. 1st Sess.) stated (p. 11):

"Under the bill, these employees of the War Shipping Administration will have the seaman's right to wages, maintenance and cure \* \* \*. They will continue to have the right to indemnity through court action for injury resulting from unseaworthiness of the vessel or defects in vessel appliances, and they (and their dependents) will have the right to action under the Jones Act (1920) for injury or death resulting from negligence of the employer. Such seamen will have the right to enforce claims for these benefits according to the procedure of the Suits in Admiralty Act \* \* \*."

[5] Brady v. Roosevelt S. S. Co., 1943, 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471.

[6] Compare Shilman v. United States, 2 Cir., 1947, 164 F.2d 649, certiorari denied, 68 S.Ct. 608.

that wholly independent of the Clarification Act he has an enforceable right against the defendant for wages and maintenance and cure and for the loss of his effects the district court was right in holding that by virtue of the Clarification Act the plaintiff's sole remedy was his suit in admiralty against the United States. This brings us, therefore, to consider whether by virtue of the relationship between the parties independent of the Clarification Act the plaintiff did have such an enforceable right against the defendant.

■ In Aird v. Weyerhaeuser Steamship Company, 3 Cir., 169 F.2d 606, a case involving a claim by a seaman for wages against a general agent of the United States employed under the same standard wartime form of general agency service agreement, this court held that the general agent was not liable to a seaman for his wages where the fact that the United States was owner of the vessel was disclosed on the face of the shipping articles which the seaman signed. In the present case the shipping articles which the plaintiff signed contained the following statement endorsed thereon:

"It is also agreed that the Master, Officers and all other Members of the Crew, are employees of the United States subject to the provisions of Public Law No. 17 of the 78th Congress, as amended, and are not employees of Agwilines, Inc., that all decisions, amendments, and attachments of the Maritime War Emergency Board shall apply to and become a part of this agreement."

The articles also contained a specific reference to "Agwilines, Inc., as gen. agts. for W S A."

As we pointed out in the Aird case the obligation for the payment of wages arises out of the contract of employment, the shipping articles, between the seamen and the master, the latter therein representing the ship and its owners. The same is true of the obligation to provide maintenance and cure for an injured seaman.[7] For the reasons stated in our opinion in the Aird case

we hold that the plaintiff may not assert a claim for wages or maintenance and cure against the defendant.

■ This leaves for consideration the plaintiff's claim against the defendant for loss of his effects. Such a claim is not contractual in nature but rather sounds in tort.[8] It is therefore, maintainable against the defendant only if the latter can be held responsible under the doctrine of respondeat superior for the acts of those individuals who were actually responsible for the plaintiff's loss of his effects. Assuming that the persons responsible for the loss of his effects were the master and members of the crew the plaintiff argues that Brady v. Roosevelt S. S. Co., 1943, 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 and Hust v. Moore-McCormack Lines, 1946, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, are authority for the proposition that the defendant is liable to him for their tort. We do not agree.

In the Brady case it appeared that the defendant was an operating agent employed by the United States Maritime Commission to operate a government vessel in peacetime. As operating agent in possession of the vessel the Supreme Court held that it would be answerable to a third person for a maritime tort committed on board. The agency contract involved in the Brady case was, however, quite different from the standard wartime general agency service agreement involved in the case now before us. There the defendant was specifically empowered to operate the vessel while here the obligation of the defendant is only to manage the vessel's business and the full control, responsibility and authority with respect to the navigation and management of the vessel itself is by the general agency service agreement specifically entrusted to the master as agent and employee of the United States. There are many cogent reasons why, although the Government may have been willing in peacetime to put its vessels into the possession of an agent, it should insist that in wartime it must itself

[7] Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368; Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107.

[8] Hutchinson v. Coombs, D.C.Me.1825, Fed.Cas. No. 6955; The Washington, D.C.N.Y.1924, 296 F. 158, 167.

retain full possession and complete control of the navigation of its vessels through its own masters and crews. Some of these reasons are referred to in Caldarola v. Eckert, 1947, 332 U.S. 155, 159, 67 S.Ct. 1569, 91 L.Ed. 1968. Suffice it to say that under the form of agreement involved in the present case the defendant did not become operating agent of the vessel or owner pro hac vice so as to become liable for torts committed on board by the master or members of the crew. On the contrary, as we have pointed out in the Aird case, the responsibility of the defendant under the agreement was merely that of shoreside agent or ship's husband.

But, says the plaintiff, in Hust v. Moore-McCormack Lines, 1946, 328 U.S. 707, 66 S. Ct. 1218, 90 L.Ed. 1534, a general agent for a government vessel acting under the form of general agency service agreement involved in this case was held liable to a seaman in an action under the Jones Act, 46 U.S.C.A. § 688. So much must be admitted. Nonetheless the Hust case is not controlling here. It is true that the opinion of the four justices who constituted the majority of the seven-judge court which sat in that case described the defendant as an operating agent and held that as such it was the "employer" of the injured plaintiff within the meaning of the Jones Act. But in Caldarola v. Eckert, 1947, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, decided at the next term, five justices of the Supreme Court (including among them the three who dissented in the Hust case) held, against the vigorous dissent of the four justices who had formed the majority in the Hust case, that the wartime standard form of general agency service agreement employed by the War Shipping Administration and with which we are here concerned did not make the government's general agent the owner pro hac vice of a vessel assigned to it so as to make it liable to a third party, in that case a longshoreman, for a maritime tort committed on the vessel. It thus appears that on the question now under discussion, namely, whether a general agent under the standard form of general agency service agreement is an operating agent in possession of the government vessel assigned to it and, therefore, responsible for maritime torts committed thereon by members of the crew, the Caldarola case compels a negative answer. To the extent that the Hust case was authority to the contrary it must, therefore, be regarded as overruled by the Caldarola case.[9]

We conclude, therefore, that the defendant may not be held liable to the plaintiff for the loss of his effects if that loss resulted from the conduct of the master or members of the crew of the Christopher Gadsden. There is, of course, the possibility that the plaintiff's effects were delivered by the master to the defendant's shoreside employees, not themselves employees of the United States, and wrongfully lost or withheld from the plaintiff by the latter. In such case the defendant might well be liable to the plaintiff for the conduct of its employees resulting in the loss of his effects. The difficulty with this proposition in the present case, however, is that the plaintiff failed to prove any such facts or, indeed, any facts from which such facts might be inferred. On the contrary the stipulation of facts upon which he submitted his case merely states that he left his effects on board the Christopher Gadsden when he left her on December 24, 1945, that he has demanded their return and that defendant has been unable to locate them and has failed to account for them or compensate him for their loss. In the absence of evidence that employees of the

---

[9] In Caldarola v. Eckert, 1947, 332 U. S. 155, 159, 67 S.Ct. 1569, 1571, 91 L.Ed. 1968 the court, speaking of the Hust case, said:

"We there held that under the Agency contract the Agent was the 'employer' of an injured seaman as that term is used in the Jones Act, and a seaman could therefore bring the statutory action against such an 'employer.' The Court did not hold that the Agency contract made the Agent for all practical purposes the owner of the vessel. It did not hold that it imposed upon him, as a matter of federal law, duties of care to third persons, more particularly to a stevedore under employment of a concern unloading the vessel pursuant to a contract with the United States."

defendant ever had possession of the plaintiff's effects these stipulated facts are clearly insufficient to fasten liability upon the defendant. Moreover even if the somewhat ambiguous language of the defendant's answer to the allegations of the complaint with respect to the loss of the plaintiff's effects may be construed as an admission of liability it is quite clear that it does not constitute an admission as to the identity or value of the lost effects. Accordingly since neither the identity [10] nor value of the effects was stipulated by the parties and no evidence on the subject was offered by the plaintiff the court did not err in dismissing the complaint as to this cause of action.

The judgment and order of the district court will be affirmed.

BIGGS, Circuit Judge (concurring).

For the reasons stated in my concurring opinion in Aird v. Weyerhaeuser Steamship Co., 3 Cir., 169 F.2d 606, I concur in the result reached by this court.

---

[10] The statement contained in the stipulation of facts filed by the parties that "Plaintiff contends that the various items of personal effects are hereafter set forth in Exhibit 'F'" is no more than a stipulation of the fact of plaintiff's contention. It clearly is not an agreement by the defendant that the items were in fact as set forth in the exhibit.