# FINK *v.* SHEPARD STEAMSHIP CO.

NO. 360.

Argued February 2, 1949.—Decided June 27, 1949.

James Landye argued the cause for petitioner in No. 360. With him on the brief were *B. A. Green* and *Edwin D. Hicks.*

*Abraham E. Freedman* argued the cause and filed a brief for petitioner in No. 430.

*Leavenworth Colby* argued the cause for respondents. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Paul A. Sweeney.*

MR. JUSTICE REED delivered the opinion of the Court.

These two cases raise issues which, as the facts set out below indicate, are controlled by our decision in *Cosmopolitan Shipping Co. v. McAllister, ante,* p. 783, decided this day.

---

The petitioner, Fink, signed on the S. S. *George Davidson* on June 8, 1943, as an able seaman. The shipping articles showed as the "Registered Managing Owner or Manager" the "War Shipping Administration (Owner) Shepard Steamship Co. (Gen. Agents)." The contract pursuant to which respondent, Shepard Steamship Co., handled certain phases of the ship's business was the standard form General Agency Agreement, GAA 4–4–42. Petitioner was procured by respondent from a union hiring hall for employment by the master of the vessel.

In August, 1943, while the ship was at sea, Fink was ordered by the master and boatswain to empty a garbage

can overboard. No one was assigned to help him although the can was heavy, the rail high and the sea rough. The roll of the ship caused the can to be thrown backwards against petitioner, injuring him.

Petitioner instituted this action for damages against respondent under the Jones Act[1] in a Circuit Court of Oregon, alleging that respondent was "in possession of, controlled, navigated, managed and operated" the *Davidson* and was negligent in ordering petitioner to dump the garbage in a heavy sea without assistance.[2] Respondent denied all these allegations. The jury was charged that the officers of the ship were agents of respondent and that their negligence, if any, should be imputed to respondent. Judgment was entered on a jury verdict for petitioner. The Supreme Court of Oregon reversed, *Fink* v. *Shepard S. S. Co.*, 183 Ore. 373, 192 P. 2d 258, holding that the remedy for an injury caused by the negligence of the ship's officers on a government-operated vessel such as this, subsequent to the enactment of the Clarification Act, was exclusively by suit against the United States under the Suits in Admiralty Act. It thus distinguished *Hust* v. *Moore-McCormack Lines*, 328 U. S. 707, on the ground that there the injury occurred before the effective date of the Clarification Act.[3] A petition for certiorari was granted and the case set for argument along with *Cosmopolitan Shipping Co.* v. *McAllister, supra.*

The question here is identical with that in *McAllister, i. e.,* whether the general agent of a vessel owned by the

---

[1] 41 Stat. 1007, 46 U. S. C. § 688.

[2] He also filed claim on account of his injuries with the War Shipping Administration and sued the United States pursuant to the Suits in Admiralty Act and the War Shipping Administration (Clarification) Act, 57 Stat. 45, 50 U. S. C. App. § 1291. This suit was later dismissed without prejudice.

[3] See *Hust* v. *Moore-McCormack Lines, supra,* at 727.

government and operated by the War Shipping Administration is liable under the Jones Act to a seaman who is injured at sea after the date of enactment of the Clarification Act by the negligence of the officer of the vessel. The reasons and arguments supporting our negative answer to that question in *McAllister* are equally applicable here. No purpose would be served by repeating them.

We desire to point out, however, that the testimony in this case confirms the conclusions which we have drawn from a study of the standard form General Agency Agreement. It establishes that respondent was neither the employer of officers on vessels such as the *Davidson* nor a party to such a relation with them that it could be held vicariously liable for their torts. It shows that such officers were required to fill out an application form for employment captioned "War Shipping Administration, Division of Operations, Service Record." Consideration and approval of these applications by the W. S. A. made the applicants employees of the United States. Thereafter, transfer to other W. S. A. vessels for which different companies were general agents could be accomplished by furnishing to W. S. A. a transfer form. No new application for employment was required. It shows that the general agent had no voice in determining the destination or route of the vessel, in what service it would be operated, or how it would be handled in foreign ports. The soliciting and loading of cargo and the collection of freight were functions of the berth agents.

---

Petitioner Gaynor signed shipping articles in 1945 as a member of the crew of the S. S. *Christopher Gadsden,* a vessel which was owned by the United States and operated by the War Shipping Administration. The ar-

ticles referred to "Agwilines, Inc., as gen. agts. for WSA," and also stated, ". . . the Master, Officers, and all other Members of the Crew are employees of the United States subject to the provisions of [the Clarification Act, 57 Stat. 45, 50 U. S. C. App. § 1291], and are not employees of Agwilines, Inc." Respondent Agwilines was the general agent for the ship under standard form contract GAA 4-4-42. The *Gadsden* departed from Philadelphia on a foreign voyage and stopped en route at Charleston where, while on authorized shore leave, petitioner was injured in a highway accident. Neither the ship, the general agent, nor the W. S. A. was directly involved in any way in the accident.

Petitioner sued respondent for wages and maintenance and cure, alleging that respondent "possessed, owned, operated and controlled" the vessel. Agwilines denied these allegations, averred that it was merely the general agent under the standard form contract, that the ship was "owned, operated and controlled by the United States," and that petitioner had failed to comply with the Clarification Act, which required complaints of this sort to be brought pursuant to the Suits in Admiralty Act.

On the pleadings, an agreed statement of facts as summarized above, the shipping articles, the standard form agreement, and the delivery and redelivery certificates evidencing the allocation of the vessel to respondent by the W. S. A., the United States District Court for the Eastern District of Pennsylvania dismissed the action on the ground that petitioner's only remedy was a suit against the United States pursuant to the Clarification Act. 76 F. Supp. 617. The United States Court of Appeals for the Third Circuit affirmed. *Gaynor* v. *Agwilines, Inc.*, 169 F. 2d 612. We granted certiorari and assigned the case for argument along with *Cosmopolitan*

*Shipping Co.* v. *McAllister, ante,* p. 783, and *Fink* v. *Shepard Steamship Co.,* No. 360, decided herewith.

Although this case involves the right to wages and maintenance and cure, whereas *McAllister* and *Fink* concern damages for negligent injury, the reasoning and decisions in those cases are dispositive here. This is so because the right to maintenance and cure is "annexed to the employment," *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371; see *The Osceola,* 189 U. S. 158; is "an incident of the marine employer-employee relationship," *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724, 730; 1 Benedict, Admiralty (6th ed., 1940) 61, 253; and because only the owner or owner *pro hac vice* of a vessel is liable for wages, which also stem from the contract of employment. *Shilman* v. *United States,* 164 F. 2d 649, 652; *The John E. Berwind,* 56 F. 2d 13; *Everett* v. *United States,* 284 F. 203; *Cox* v. *Lykes Brothers,* 237 N. Y. 376, 383, 143 N. E. 226, 228–229. Thus liability for wages and maintenance and cure depends upon the same relationship that is required to support an action for negligent injury. That relationship does not exist between petitioner and respondent.[4]

The delivery certificate, relied upon by petitioner as showing that the *Gadsden* was in the possession and control of Agwilines, recites in pertinent part that the ship "was on the 31st day of December, 1942 . . . delivered . . . by War Shipping Administration to Agwilines, Inc. UNDER TERMS AND CONDITIONS OF 'Service Agreement, Form GAA' . . . ." It is quite obvious, we

---

[4] Note that wages and maintenance and cure are treated along with claims for injuries in § 1 of the Clarification Act, which, in the case of seamen employed on United States or foreign vessels as employees of the United States through the W. S. A., directs that all of these rights shall be enforced pursuant to the provisions of the Suits in Admiralty Act.

think, that this certificate refers only to a "delivery" for the purposes contemplated by the General Agency Agreement and adds nothing of significance to that agreement, which we have already held, *McAllister, supra,* to be insufficient to establish liability on the part of the general agent.

*Nos. 360 and 430 affirmed.*

Mr. Justice Black, Mr. Justice Douglas, Mr. Justice Murphy and Mr. Justice Rutledge dissent.