**SELLERS v. UNITED STATES LINES CO. et al.**

No. 24543-S-L.

United States District Court
N. D. California, S. D.

Nov. 8, 1949.

Harold M. Sawyer, of Gladstein, Andersen, Resner & Sawyer, San Francisco, Cal., proctors for libelant.

Frank J. Hennessy, United States Attorney, San Francisco, Cal., proctor for respondent United States.

Farnham P. Griffiths, McCutchen, Thomas, Matthew, Griffiths & Greene, San Francisco, Cal., proctors for respondents United States and United States Line Co.

LEMMON, District Judge.

The libelant knew when he left the ship on August 2d that the loading was about completed. He had just come off two watches which ran from 4 p. m. on August 1st to 8 a. m. on August 2d. It was his duty while on these watches to take the temperatures. In doing this he was required to go down in the hold and he must have observed that the loading operations were about completed on the morning of the 2d, as the ship's log definitely shows. He states that he had permission from either the Chief Engineer or Assistant Engineer to leave the boat and not return until his regular watch of 4 o'clock on the afternoon of the 3d. This is denied by the Assistant Engineer and it appears from the Captain's testimony that, though the crew members exchanged watches, this was an irregular procedure and permission should have been obtained for that purpose. The Assistant Engineer does say that he permitted Sellers to make the exchange but does not tell on what date he gave permission. He does state definitely that he told Sellers that he would be obliged to keep in touch with the ship's sailing time. This Sellers could easily have done. He himself admits that he stayed in a hotel within sight of the ship as it was berthed. He testified that he contacted members of the crew on the evening of the 2d and that they did not know anything about the ship's departure. The shore leave notice was posted at 1 p. m. of that day and if he contacted any members of the crew they knew when shore leave was over. I therefore believe that Sellers prevaricates in this regard. He testified on the stand that he had had a few glasses of beer on the evening of the 2d and according to the Captain's testimony Sellers told the Captain that he had spent the night with a woman in the hotel who failed to awaken him in time in the morning.

It is my deduction that libelant is a shiftless character, that he was on pleasure bent and paid no heed to his duty to be informed as to the time when he should return to the ship. It is unnecessary to decide whether Sellers is a deserter. If he negligently failed to keep in touch with his ship, having in mind that these transactions occurred under war conditions and the time of departure could not be posted, it would seem to me that his being left behind was due to his own carelessness and that he

should not recover from the government for anything attributed to that carelessness.

He now seeks to recover his loss of wages from the date of the ship's departure from Auckland until the end of the voyage of the S. S. Matchless; maintenance at the rate of $5.50 per day from August 2, 1945, the date the ship sailed from Auckland, until September 30, 1945, the date libelant left Auckland to be repatriated on the S. S. Andrew Marschalk: travelling expenses from Jacksonville, Florida, to San Francisco in the sum of $147 and $20 for meals; general damages in the sum of $5000 for mental anguish, etc., are included. $350 is sought as the claimed value of personal property libelant alleges was not turned over to the Shipping Commissioner.

■ With respect to the wages and maintenance sought in the libel the facts show that libelant's predicament was due to his own negligence. Where the negligence of the seaman results in his being left in a foreign port he is entitled only to wages to the date when he leaves the ship, and no more. Gylock v. Alaska Packers Ass'n, D.C., 82 F.Supp. 127 (Judge Harris); Miller v. United States, D.C., 51 F.Supp. 924; Colon v. United States, D.C., 74 F.Supp. 216.

■ The alleged personal injury is brought under the Jones Act, 46 U.S.C.A. § 688. It does not seem that the alleged injury could be tortured into a personal injury suffered in the course of his employment, nor do the facts sustain such a damage, and the libelant should not be allowed to recover any part of the $5000 sought.

■ Incorporated in the Articles was Operations Regulation No. 64 providing for payment of transportation from the final point of discharge in the continental United States to the seaman's port of shipment. This provision is held not to apply to a crew member who is separated from his vessel abroad for any reason. United States v. Johnson, 9 Cir., 160 F.2d 789; Ellis v. American Hawaiian S. S. Co., 9 Cir., 165 F.2d 999. Therefore libelant should not recover the costs of his transportation from Jacksonville, Florida, libel-

ant's point of repatriation, to San Francisco, where he boarded the ship.

■ The testimony showed that three suitcases, a satchel and $1240 in cash had been received by libelant from the Shipping Commissioner and that he had given a receipt for his property. It is apparent that the officers took good care of libelant's property and it is more likely that libelant is in error as to precisely what effects he had on the ship. There is no absolute duty of care with respect to such belongings. Moser v. Standard Oil Co. of New Jersey, D.C., 60 F.Supp. 6.

■ Respondent United States Lines contends that a decree should be granted in its favor inasmuch as it was the general agent of the vessel on the third cause of action. Cosmopolitian Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Fink v. Shepard Steamship Co., 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709.

Judgment for respondents.