THERIOT v. ATLANTIC REFINING CO.

No. 209 of 1949.

United States District Court
E. D. Pennsylvania.
July 18, 1950.

Paul M. Goldstein (of Stark & Goldstein), of Philadelphia, Pa., for plaintiff.

T. J. Mahoney, Jr. (of Krusen, Evans & Shaw), of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is a seaman's action in admiralty against The Atlantic Refining Company (hereinafter called Atlantic) to recover damages for injuries sustained by the libellant on or about January 8, 1946 while employed aboard the S.S. Four Lakes, and to recover maintenance and cure. It is now before me on the respondent's peremptory exceptions to the libel wherein the respondent prays that the libel be dismissed.

The libellant alleges that Atlantic owned, operated and controlled the "Four Lakes", and that his injuries resulted from the negligence of the master or the crew and from the unseaworthiness of the vessel. The libel was filed on June 6, 1949.

An affidavit with its accompanying documents filed by Atlantic shows that when the accident happened the "Four Lakes" was owned by the United States of America, War Shipping Administration; that War Emergency Tankers, Inc. (hereinafter called Emergency Tankers) handled certain phases of the ship's husbandry pursuant to a service agreement GAA-Tankers (Special) [1]; and that Atlantic performed some of Emergency Tankers duties pursuant to a Principal Sub-Agent agreement.

Article 3A(d) of the service agreement with the War Shipping Administration provided that Emergency Tankers, as General Agent, shall procure the master of the vessel subject to the approval of the United States; that the master "shall have and exercise full control, responsibility and authority with respect to the manning, navigation and management of the vessel"; that the master, officers and crew of the vessel shall be employees of the United States; and that such persons shall be paid with funds provided by the United States.

In keeping with the terms of this service agreement, the Principal Sub-Agent agreement between Emergency Tankers and Atlantic expressly stated in Article 3 thereof that, "The General Agent shall arrange for the appointment of the Master of any vessel, and the engagement by the Master of the officers and members of the crew of the vessel, and such Master, officers and members of the crew of the vessel shall be employees of the United States. The Master shall be an agent of the United States and shall have and exercise full control, responsibility and authority with respect to the manning, navigation and management of the vessel."

The shipping articles signed by the libellant on January 2, 1946 show that the "Operating Company on This Voyage" was "United States of America War Shipping Administration" with its "Address" at "War Emergency Tankers, Inc. General Agent—30 Broad St., N. Y." Words to that effect were also stamped on the shipping articles. Furthermore, these articles had stamped on them the agreement "that the Master, officers and all other Members of the Crew are employees of the United States of America * * * and are not

1. This service agreement GAA-Tankers (Special) is identical with the GAA-Tankers service agreement, 46 C.F.R. Cum.Supp. § 306.49, except that GAA-Tankers (Special) provides for the appointment of Principal Sub-Agents, and in various articles outlines the duties of the Principal Sub-Agents.

employees of War Emergency Tankers, Inc. * * *"

Under the terms of the libellant's contract of employment—the shipping articles, under the terms of the Principal Sub-Agent agreement between Atlantic and Emergency Tankers, and under the terms of the service agreement between Emergency Tankers and the United States, it is obvious that Atlantic did not own or operate the "Four Lakes", and had no control over its master and crew.

▌ The Supreme Court of the United States has recently decided that a General Agent of the War Shipping Administration is not the seaman's employer and is not liable to him for damages for injuries resulting from the negligence of the master or the crew or for maintenance and cure for injuries resulting therefrom. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Fink v. Shepard Steamship Co. (Gaynor v. Agwilines, Inc.), 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709. See also cases cited in Thomson v. Alcoa Steamship Company, Inc., D.C.E.D.Pa., 90 F.Supp. 572.

In the McAllister and Fink cases the Supreme Court had before it another service agreement, GAA 4-4-42, and based its decision on Article 3A(d) of that agreement. Article 3A(d) of GAA 4-4-42 and Article 3A(d) of GAA-Tankers (Special) are identical.

▌ Emergency Tankers, as General Agent, had no control over the master and the crew of the "Four Lakes", did not pay them their wages, and did not choose the route or destination of the "Four Lakes". Since under the McAllister and Fink cases Emergency Tankers would not be liable to the libellant for injuries resulting from the negligence of the master or the crew, then Atlantic, who as Principal Sub-Agent had less control, if possible, over these factors than Emergency Tankers had, should not be liable.

Although the problem in the McAllister and Fink cases is not identical with the problem in this case, it is so analagous that I consider those decisions as controlling my decision on the negligence phase of this case.

The libellant also alleges that his injuries were caused by the respondent's failure to provide a seaworthy vessel in that the handrails on the ladder from which he slipped were loose.

The McAllister and Fink cases did not determine the General Agent's liability for failure to provide a seaworthy vessel. However, these decisions do cast some light on this problem.

▌ The discussion in the McAllister case about the Clarification Act [2] makes it clear that the purpose of this Act was to hold the United States liable, as the seaman's employer, for damages and maintenance and cure for injuries received in the course of employment. Cosmopolitan Shipping Co. v. McAllister, supra, 337 U.S. at pages 787-794, 69 S.Ct. 1317.

This conclusion is bulwarked by Article 16(a) of the service agreement between United States and Emergency Tankers, and by Article 8(a) of the Principal Sub-Agent agreement between Emergency Tankers and Atlantic. These provisions provide that the United States shall indemnify and hold the General Agent and its Principal Sub-Agents harmless from " * * * any and all claims and demands * * * of whatsoever kind or nature and by whomsoever asserted for injury to persons or property arising out of or in any way connected with the operation or use of said vessels or the performance by the General Agent and Principal Sub-Agents of any of its obligations hereunder, including but not limited to any and all claims and demands by * * * crew members * * *, and including but not limited to * * * claims for damages for personal injury or loss of life, and claims for maintenance and cure."

Furthermore, the McAllister and Fink cases established that the United States, not the General Agent or a Principal Sub-Agent, is the seaman's employer.

2. Act of March 24, 1943, c. 26, § 1, 57 Stat. 45, 50 U.S.C.A.Appendix, § 1291(a).

859

 A suit in admiralty under the Jones Act [3] or the general maritime law for damages and maintenance and cure for injuries resulting from the unseaworthiness of the vessel must be against the ship, the shipowner, or the seaman's employer. Cosmopolitan Shipping Co. v. McAllister, supra; Panama Railroad Company v. Johnson, 264 U.S. 375, 387–388, 44 S.Ct. 391, 68 L.Ed. 748; The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The Norland, 9 Cir., 101 F.2d 967, 971.

 This is an admiralty action in personam against Atlantic, but Atlantic is neither the owner of the "Four Lakes", nor the libellant's employer. It follows that the libellant has mistaken his remedy.

I do not mean to imply that Atlantic or any other agent may not be liable for its own tort of negligently performing its duties when this negligence causes or contributes to personal injury. However, a suit to enforce such liability in this instance cannot be brought under the admiralty jurisdiction of this Court, but must be brought in the state courts or as a civil action in the federal courts if jurisdiction is present.

The respondent also contends that laches bars any recovery by the libellant. In view of the foregoing opinion, it is not necessary for me to rule on this contention.

Accordingly, it is ordered, adjudged and decreed that the respondent's peremptory exceptions to the libel are granted, and the libel is hereby dismissed.

3. Act of June 5, 1920, c. 250, § 33, 41 Stat. 1007, 46 U.S.C.A. § 688.