ATLANTIC COAST LINE R. CO. v. AGWILINES, Inc.

No. 13383.

United States Court of Appeals Fifth Circuit.

April 5, 1952.

LeRoy Allen, Tampa, Fla., for appellant.

Benjamin Forman, Attorney, Department of Justice, Leavenworth Colby, Atty., Admiralty & Shipping Sec., Dept. of Justice, Washington, D. C., Herbert S. Phillips, U. S. Atty., William A. Gillen, Tampa, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Upon allegations: that the No. four port cargo boom of the steamship Luther Martin was not properly rigged; that, as a result thereof, it had collided with, and damaged, the coal hoist of appellant's dock at Tampa; and that the defendant, Agwilines, Inc., shoreside agent or ship's husband for the United States, was operating, controlling, managing, and maintaining the Martin and responsible for it, plaintiff below, appellant here, sued Agwilines for the damages caused.

By answer and by motion for summary judgment, Agwilines denied that it was operator or manager, or otherwise responsible for the operation of the Luther Martin or the damages caused thereby.

For affirmative defense, it alleged: that its only connection with the Martin, as general agent of it, was through and under a General Agent Agreement and an allocation letter dated June 26, 1942,[1] and not otherwise; that at the time of the collision, it was not managing, operating, controlling, and maintaining the Martin, but the United States was; that the negligence, if any, was the negligence of the United States and its employees and not that of the defendant; and that the defendant does not owe, and has not breached, any duty to the plaintiff and is not liable for the collision damage sued for.

On the basis of these allegations and the attached exhibits, which were not denied or otherwise disputed, and upon the authority of cases cited to him, the district judge, agreeing with defendant, granted its motion and entered summary judgment.

Plaintiff coming here on an agreed statement and on a specification of errors, in number five but in law and in fact one, seeks to reverse the judgment. This specification is in effect that the court erred in determining as matter of law, upon the basis of Exhibits "A" and "B", that defendant was not responsible in damages for the acts of the crew of the Martin.

Recognizing that the case is in small compass, appellant treats it in its brief as presenting only this single question: Does the General Agency agreement between appellee and the United States relieve the agent of its liability at common law for its own negligence?

The appellee does not at all contest the correctness of appellant's legal theory, that an agent cannot, by taking an indemnity from its principal, relieve itself from liability to a third person caused by its own

1. Attached as exhibits "A" and "B", entered into in connection with the management and conduct of the business of certain vessels of the United States and contemplated to be allocated and assigned to it.

fault. It denies, though, that this is the issue for decision. Insisting, instead, that this statement of it not only begs the whole question but flies in the face of the controlling authorities, dealing with agency agreements of the kind involved here, it urges upon us that the appeal presents two quite different questions. As it states them, these are:

1. Whether appellant's remedy by suit against the United States under the Public Vessels and Suits in Admiralty Acts, 46 U.S.C.A. §§ 781 et seq., 741 et seq., is an exclusive one, precluding suits against an agent of the Government on account of acts alleged to be within the scope of its agency.

2. Whether it is open to appellant, contrary to the interpretation given the government standard form GAA 4-4-42 agency agreement in Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968, and other cases following that decision to undertake to prove that a particular agent, appellee herein, is responsible for the acts of the Government's civil service master and crew whose supervision and control was outside the scope of its agency.

Pointing out that appellant has timely brought a valid suit against the United States, under the Public Vessels and Suits in Admiralty Act, 46 U.S.C.A. 741, and setting out the statutes and regulations[2] it deems applicable, appellee argues with vigor and confidence: (1) that the acts furnish the exclusive remedy,[3] and the complaint should be dismissed for want of jurisdiction; and (2) that if this is not so, the judgment was right because it is settled by the decisions[4] that, under the standard form of agreement employed in this kind of agency, the supervision and control of the civil service master and crew was outside the scope of appellee's agency, so that appellee is not responsible for their acts.

Appellant, planting itself firmly on Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S. Ct. 425, 87 L.Ed. 471, and Hust v. Moore-McCormack, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534, urges upon us that the facts of this case bring in squarely within the rule of those cases, and the judgment dismissing the action must be reversed.

▇ We do not think so. Putting to one side the fact that Hust v. Moore-McCormack has been expressly overruled in the McAllister case, and that the agency agreement, dealt with in Brady v. Roosevelt, supra, was of a completely different purport from that under which appellee was employed, we are in no doubt that the judgment must be affirmed because: (1) the remedy against the United States provided by the Public Vessels and Suits in Admiralty Act is exclusive;[5] (2) if this is not so, the organization of government shipping operations excluded general agents, such as appellee, which was appointed to manage "the business" as distinguished from "the operation" of the vessel, from any authority and control over the civil service masters and crews who manned, navigated, and physically managed the vessels; and (3) nowhere in the GAA 4-4-42 general agency agreement, under which appellee acted here, is any language

2. "The Act of December 13, 1950, Public Law 877, 81st Cong., is printed in Appendix A. infra, p. 44.

"The applicable civil service rules and regulations and certain of the pertinent War Shipping Administration operations regulations are set forth in Appendix B, infra, pp. 45-52.

"The government standard form general agency agreement GAA 4-4-42, War Shipping Administration, General Order No. 21 (7 Fed.Reg. 7561; 46 C.R.F.Cum. Supp. sec. 306.44) is printed in the Record (R. 14-31) as executed by the particular agent, appellee herein."

3. Johnson v. U. S. S. B. E. Fleet Corp., 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451;

Caldarola v. Eckert, 332 U.S. 155, 57 S. Ct. 1569, 91 L.Ed. 1968; Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692.

4. Cox v. Lykes Bros., 237 N.Y. 376, 143 N.E. 226; Clyde Commercial v. West India S. S. Co., 2 Cir., 169 F. 275; Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Fink v. Sheppard Steamship Co., 337 U. S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709.

5. Senate Report 2535, 81st Congress, 2nd Session, pp. 1-3, 1951 A.M.C. 149-151. Cf. Bruner v. United States, 72 S.Ct. 581.

to be found amounting to a demise or delivery of the physical possession and control of the vessels to the general agent. Cf. Cosmopolitan Shipping Co. v. McAllister, note 4 supra.

Read and search it as one will, the agreement admits of but one interpretation, that the master, as the direct agent, and the employees of the United States, as operating owner, are in possession of the ship to the exclusion of the general agent.

By the GAA 4-4-42 husbandry agreement, in contrast to the Roosevelt operating agreement, the United States retained navigation and management of the vessels for itself, and employed private operators, including berth agents, as well as general agents, not as independent contractors but as agents, only to operate certain aspects of the vessels' business, which may be assigned to it from time to time. The general agent, appellee here, was appointed to manage the "business of", not the "vessels".

Only one who is owner or owner *pro hac vice,* operating the vessel, is liable for the acts of the master and crew in its navigation and management. Nothing in the undisputed facts, on which the motion for summary judgment was submitted and the judgment rested, supports or tends to support the view that appellee was such an owner, and so liable. Indeed, the showing made compelled a finding and judgment to the contrary.

The judgment was right. It is affirmed.