## KANISCHER
### v.
### IRWIN OPERATING CO.
#### No. 14996.

United States Court of Appeals
Fifth Circuit.

Aug. 25, 1954.

Rehearing Denied Sept. 14, 1954.

Arthur Roth, Miami, Fla., Jacob Rassner, New York City, Martin D. Von Zamft, Von Zamft & Lake, Miami, Fla., for appellant.

Jackson L. Peters and Robert F. Underwood, Knight, Smith & Underwood, Miami, Fla., for appellee.

Before HOLMES and STRUM, Circuit Judges, and THOMAS, District Judge.

THOMAS, District Judge.

Naming as defendant his employer, a corporation operating a resort hotel at Miami Beach, and one Kaplan, owner and operator of the speed boat "Jo Ann", appellant filed suit under the Jones Act, 46 U.S.C.A. § 688, for serious injuries to both legs, resulting from contact with the propeller of the boat on August 25, 1951.

In sequence, motions to dismiss for want of jurisdiction under the Act and for summary judgment on the same ground were filed by the employer-defendant, appellee here. After each motion had been denied by the district judge, the case came on for a pre-trial hearing, as a result of which it was stipulated, among other things that the relationship of employer and employee did not exist between Kaplan and the plaintiff. On consideration of this stipulation, the trial judge, with plaintiff's consent, transferred the suit against Kaplan to the admiralty docket, and allowed the case against the defendant-employer to proceed to trial before a jury. When the plaintiff had rested his case, defendant moved the court to direct a verdict for the defendant or, in the alternative, to dismiss the case for lack of jurisdiction.

The trial judge found that Kaplan was the sole owner and was in possession and control of the boat at the time of the accident; and that there was no evidence to show that there was any connection between the defendant-employer and the operation of the boat "Jo Ann", or that Kaplan was operating the boat as the agent, servant or employee of the defendant. On those findings he held that the action could not be maintained under the Jones Act and would have to be dismissed, as it had not been made to appear that the defendant was either the owner or the owner *pro hac vice* of the boat at the time of the accident, citing Fink v. Shepard Steamship Co., 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709; Cos-

mopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Gerradin v. United Fruit Co., 2 Cir., 60 F.2d 927.

We agree with the result, but we do not think this reasoning is wholly dispositive of the case. Other phases of this litigation, we believe, are of equal importance and should be discussed. Pertinent portions of the record disclose the following facts:

Appellant had been employed by appellee for several years as a cabana boy, whose duties were to look after the bathhouses on the beach and to wait upon the guests who occupied these cabanas during the day. For the winter season plaintiff-appellant testified his tips were sufficiently remunerative, and he received no additional compensation from the hotel. During the summer months, he received a monthly salary of $50, plus tips. His hours were approximately from 8:00 a. m. to 6:00 p. m. When he was not busy looking after the cabanas and waiting on guests, he could, after obtaining permission of a superior, fish during working hours from the jetties, or swim, or otherwise amuse himself. He liked to fish, and sometimes took the small guests of the hotel fishing from the jetties.

On two occasions prior to the day on which he received disabling injuries from the propeller of the "Jo Ann", he had been fishing with Kaplan on Kaplan's pleasure boats. Appellant maintains that on those occasions and on the day of the injury his status was that of a seaman, engaged in marine employment, acting under the direction of his employer to do whatever Mr. Kaplan wanted. The "Jo Ann" was an eighteen-foot pleasure craft with an inboard motor, and had a propeller designed for high speed. She was owned and operated by Kaplan. The hotel corporation had no interest of any sort in her or in any other boat. Kaplan, however, was financially interested in the hotel, though he had nothing to do with its management. On the day of the accident, he took fishing with him two young teen-age relatives, the appellant, and appellant's friend, a lifeguard. They were out about an hour and a half, during which time appellant testified he handled the anchor, cut bait, baited hooks, cleaned fish, straightened out fishing tackle, did some fishing himself, and cleaned up the boat. Upon returning to the beach, appellant got out of the boat —he claims at the direction of Kaplan— to hold it and prevent scraping on the bottom. An unexpected maneuver of the boat caught him off guard, and sucked him into the revolving propeller.

It is unnecessary to detail appellant's version of the accident. Our concern is to determine whether or not under the pleadings, the pre-trial stipulation, and the testimony offered by the plaintiff in the court below, the court had jurisdiction of the cause.

Under the Jones Act, a seaman may bring an action at law against his employer for personal injuries sustained in the course of his employment. In an action under the Jones Act, the burden of proof is on the plaintiff to establish negligence on the part of the defendant. The Jones Act applies only to masters and members of the crew. We must therefore analyze the facts in this case to determine whether or not appellant as plaintiff places himself within the scope of the Jones Act.

(1) Was he a seaman? McKie v. Diamond Marine Co., 5 Cir., 204 F.2d 132, 135.

(2) Did he sustain personal injuries in the course of his employment as a seaman?

(3) Was he the master or a member of the crew of the vessel involved? McKie v. Diamond Marine Co., supra; Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190, 192.

(4) Was the defendant the owner *pro hac vice* of the "Jo Ann" at the time of the accident?

(5) Has plaintiff shown any negligence on the part of his employer?

The appellant was employed by the defendant as a cabana boy. The duties of a cabana boy are those of a landsman, and not of a seaman. The appellant, as do many others, enjoyed fishing. He had gone fishing previously on the "Jo Ann". He went fishing on the "Jo Ann" on the day of the accident. Irwin Operating Co. did not employ him as a seaman, and his going fishing on the "Jo Ann" on the date of the accident was not even incidental to his employment. But even assuming that the evidence discloses, which we do not agree, that he was instructed by his superior to go fishing with Mr. Kaplan on the day in question, then the fishing trip would certainly be only incidental to his employment by the hotel. Even had appellant been an experienced seaman, and even had he held seaman's papers, we would still have to refer back to proposition (2): Was he injured in the course of his employment as a seaman? Employment contemplates the relationship of employer and employee. He was not employed by the Irwin Operating Co. as a seaman but as a landsman, and his going on the "Jo Ann" on the day in question did not make him a seaman *pursuant to his contract of employment with the defendant.*

Assuming, however, that the appellant has met the burden of proof by establishing that he was a seaman and that he was injured in the course of his employment as a seaman, then we are confronted with proposition (3): Does he come under the Jones Act as master or member of the crew? The evidence definitely shows that he was not master. If the "Jo Ann" had a master, it was Kaplan. Then, was appellant a member of the crew? Our thoughts are directed along the line marked by this court in Lawson v. Maryland Casualty Co., 5 Cir., 94 F.2d 193, 194, as follows: "In a loose sense he was of the crew of the skiff, but we do not think a rowboat less than sixteen feet long, capable of carrying three men, and propelled by one oar at its stern, is a vessel having a crew within the meaning of this law [Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.], in spite of the very broad definition of a vessel found in 1 U.S.C.A. § 3. Such a boat usually has no organized personnel, no permanent company."

The "Jo Ann" was a speed boat eighteen feet long, propelled by an inboard motor. She was privately owned by Kaplan, and the record indicates that she was used exclusively as a pleasure boat by Kaplan and not for commercial purposes. But we are not concerned with her usual use. We are concerned with her use on the day in question. Kaplan wanted to go pleasure fishing. He wanted to take two young friends pleasure fishing. He invited appellant to go with him, and you may call it either as a guest or as one to assist with the boat. It makes no difference. On the day in question, appellant was not a member of the organized personnel or crew of the ship. We do not think that Congress ever intended the Jones Act to cover two or three friends duck hunting in a skiff or fishing from a privately-owned, non-commercial, eighteen-foot speed boat, even though on navigable waters.

Kaplan during the entire fishing trip and at the time of the accident was on a pleasure fishing trip solely initiated by him. Kaplan was the owner of the boat. The trip was never intended to be of any benefit to the defendant. The trip was not in furtherance of the business of the defendant. During the entire trip there was no agency relationship between Kaplan and the defendant. The defendant during the trip and at the time of the accident was not the owner *pro hac vice* of the "Jo Ann."

But assuming that the plaintiff-appellant has met the burden of proof on all of the first four propositions, we are then confronted with the question of negligence. The law suit is against Irwin Operating Co. Assuming that appellant's superior, acting for Irwin Operating Co., and acting within the line and scope of his employment, did direct appellant to go fishing with Kaplan on the occasion

in question, is that negligence? We think not. There is no evidence in the record that the defendant knew or should have known at the time that Kaplan was an incompetent operator, if indeed he was. If there be negligence, whose negligence was the proximate cause of the accident? Appellant says it was Kaplan's. In order for appellant to recover against the Irwin Operating Co. for Kaplan's negligence, appellant would further have the burden of proving that Kaplan at the time he committed the alleged negligent act was the servant, agent or employee of Irwin Operating Co., and as such was acting within the line and scope of his authority. Reece v. Ebersbach, 152 Fla. 763, 9 So.2d 805, certiorari denied 318 U.S. 784, 63 S.Ct. 855, 87 L.Ed. 1151; Tobler v. Pioneer Mining & Mfg. Co., 166 Ala. 482, 52 So. 86. The record does not support such a finding.

While we realize that this case was disposed of in the lower court on the jurisdictional feature, we have discussed the issues of line and scope, and negligence, as both are involved in the application of the Jones Act, and we think that under the facts in this case these two features are pertinent and inescapable.

It is our opinion that at the time of the accident (1) appellant was not a seaman; (2) he did not sustain his injuries in the course of his employment as a seaman; (3) he was not the master or a member of the crew of the "Jo Ann" at the time of the accident; (4) the defendant was not the owner *pro hac vice* of the "Jo Ann" at the time of the accident; and (5) appellant has shown no negligence on the part of Irwin Operating Co.

For these reasons appellant has failed in his effort to bring this case within the terms of the Jones Act and the ruling of the lower court is affirmed. No costs to be taxed.

Affirmed.

Judge STRUM sat during the oral argument of this case and concurred in this decision, but died before the opinion was written.